# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND-ODESSA DIVISION

RESONANT SYSTEMS, INC. d/b/a
RevelHMI,

               *Plaintiff*,

v.

APPLE INC.,

               *Defendant*.

Case No. 7:23-cv-00077-DC

JURY TRIAL DEMANDED

██████████████

## DEFENDANT APPLE INC.'S OPPOSED MOTION TO
## <u>TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA</u>

## TABLE OF CONTENTS

I.  INTRODUCTON ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................ 2

    A.  Resonant Accuses Features Developed by Apple Almost Entirely in NDCA ........ 2

    B.  Resonant is a Washington Company with No Apparent Ties to Texas ................. 4

    C.  Many Third Party Witnesses are in NDCA and None are in WDTX ................... 4

III.  LEGAL STANDARD ....................................................................................... 5

IV.  NDCA IS CLEARLY MORE CONVENIENT THAN WDTX ......................................... 6

    A.  This Case Could Have Been Brought in NDCA ................................................. 6

    B.  The Private Interest Factors Favor Transfer .................................................. 6

        1.  Relative Ease of Access to Sources of Proof Strongly Favors Transfer ..... 6

        2.  Availability of Compulsory Process Favors Transfer ............................... 8

        3.  Convenience of Witnesses Strongly Favors Transfer .............................. 10

        4.  Other Practical Problems are Neutral or Slightly Favor Transfer ............ 12

    C.  The Public Interest Factors Favor Transfer .................................................. 12

        1.  Court Congestion is Neutral or Slightly Favors Transfer ........................ 12

        2.  Local Interest Strongly Favors Transfer ................................................ 13

        3.  Familiarity with the Governing Law and Conflicts of Law are Neutral ... 14

V.  CONCLUSION ............................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010)...............................................................................8, 11

*In re Adobe Inc.*,
No. 2020-126, 2020 WL 4308164 (Fed. Cir. Jul. 28, 2020).......................................6

*Aguilar-Ayala v. Ruiz*,
973 F.2d 411 (5th Cir. 1992) .....................................................................................9

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020)......................................................................... *passim*

*In re Apple Inc.*,
No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ............................9, 13

*In re Apple Inc.*,
No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022), *cert. denied sub*
*nom. CPC Pat. Techs. PTY Ltd. v. Apple Inc.*, 143 S. Ct. 206, 214 L. Ed. 2d 80
(2022)....................................................................................................................8, 13

*In re Apple, Inc.*,
581 F. App'x 886 (Fed. Cir. 2014) .............................................................................9

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*,
No. 6:15-CV-00091, 2016 WL 6909479 (W.D. Tex. Jan. 28, 2016) ........................5

*Collaborative Agreements, LLC. v. Adobe Sys. Inc.*,
No. 1-14-CV-356, 2015 WL 10818739 (W.D. Tex. Aug. 21, 2015) ........................6

*Datascape, Ltd. v. Dell Techs., Inc.*,
No. 6:19-cv-00129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019) ...............10

*In re DISH Network L.L.C.*,
856 F. App'x 310 (Fed. Cir. 2021) ...........................................................................13

*Fintiv, Inc. v. Apple Inc.*,
No. 6:18-CV-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ............9

*Gemalto S.A. v. CPI Card Grp. Inc.*,
No. 15-CA-0910, 2015 WL 10818740 (W.D. Tex. Dec. 16, 2015) ..........................9

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)................................................................5, 6, 10, 12

*In re Google LLC*,
    58 F.4th 1379 (Fed. Cir. 2023) ..........................................................................12

*In re Google LLC*,
    No. 2023-101, 2023 WL 1425780 (Fed. Cir. Feb. 1, 2023) ...................................9

*In re Hoffman-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009)...................................................................5, 9, 13

*In re HP Inc.*,
    No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ...............................10

*In re Hulu LLC*,
    No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ...................................9

*InfoGation Corp. v. Google LLC*,
    No. 6:20-CV-00366-ADA, 2021 WL 5547070 (W.D. Tex. Apr. 29, 2021) ...................10, 11

*In re Juniper Networks, Inc.*,
    14 F.4th 1313 (Fed. Cir. 2021) ............................................................................5

*Koss Corp. v. Plantronics, Inc.*,
    No. 6:20-CV-00663-ADA, 2021 WL 2075685 (W.D. Tex. May 20, 2021) ...........................7

*Magic Cross Ranch, L.P. v. Manion*,
    No. 3:12-CV-00541-P, 2012 WL 13027449 (N.D. Tex. Sept. 25, 2012)................................14

*In re Morgan Stanley*,
    417 F. App'x 947 (Fed. Cir. 2011) ......................................................................12

*In re Nintendo Co., Ltd.*,
    589 F.3d 1194 (Fed. Cir. 2009)..............................................................................5

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
    137 S. Ct. 1514 (2017)............................................................................................6

*In re TracFone Wireless, Inc.*,
    852 F. App'x 537 (Fed. Cir. 2021) ....................................................................5, 10

*In re TS Tech.*,
    551 F.3d 1315 (Fed. Cir. 2008)............................................................................14

*Uniloc USA, Inc. v. Apple Inc.*,
    No. A-18-CV-990-LY, 2019 WL 2066121 (W.D. Tex. Apr. 8, 2019)....................................10

*Uniloc USA Inc. v. Box, Inc.*,
No. 1:17-CV-754-LY, 2018 WL 2729202 (W.D. Tex. June 6, 2018).....................................13

*USTA Tech., LLC v. Google LLC*,
Case No. W-22-CA-01214-XR, 2023 WL 4833481 (W.D. Tex. July 26, 2023) ........6, 8, 9, 12

*Via Vadis, LLC v. Netgear, Inc.*,
No. 14-cv-809, 2015 WL 10818675 (W.D. Tex. July 30, 2015)............................................10

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) .......................................................................................5, 10, 13

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) .........................................................................................1, 5, 11

*XY, LLC v. Trans Ova Genetics, LC*,
No. W-16-CA-00447-RP, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ...............................6

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................................5, 8, 10

35 U.S.C. § 1400(b) ....................................................................................................................6

## I.    INTRODUCTON

This case has numerous, direct relevant connections to the Northern District of California ("NDCA") and no relevant connection to the Western District of Texas ("WDTX"), much less Midland.  As such, under a straightforward application of the *Volkswagen* factors, this case should be transferred to NDCA, the clearly more convenient venue.

On the most critical factor in the transfer analysis—the convenience of witnesses—there are numerous relevant witnesses in NDCA and none in WDTX.  This is unsurprising because the features and functionalities accused of infringement in this case were developed almost entirely in NDCA, where Apple is headquartered.  In particular, at least ■ Apple employees with knowledge relevant to the case—including Apple engineers knowledgeable about the accused technology, Apple employees with knowledge of sales and other financial information related of the accused products, Apple's patent licensing personnel, and Apple employees knowledgeable about relevant prior art—reside and work in NDCA.  Accordingly, almost all relevant documents originated from, and are stored in, NDCA; all relevant Apple documents are accessible from NDCA; and Apple prior art samples and prototypes are stored in NDCA.  Although Apple maintains some offices and employees in Texas, Apple is not aware of any unique connection between those offices or employees and this case.

Plaintiff Resonant Systems, Inc. d/b/a RevelHMI ("Resonant"), a Washington-based non-practicing entity, does not appear to have any ties to Texas, much less WDTX, either.  Resonant's complaint alleges no facts describing operations or employees in Texas, and Apple has not discovered evidence of any such ties.  To the contrary, Apple's investigation yielded facts that *support* transfer—one of the named inventors on all asserted patents resides in NDCA, and all other named inventors reside in Washington.

Similarly, the only potentially relevant third parties Apple has identified so far ███████
████████████████████████████████████████ are either in NDCA or are otherwise outside of WDTX's subpoena power.  As such, Apple has not identified **any** relevant persons or entities, including third parties, with connections to Texas.

Because all factors either favor transfer or are neutral, and no factor favors keeping this case in WDTX, this case should be transferred to NDCA.

## II.    STATEMENT OF FACTS

### A.    Resonant Accuses Features Developed by Apple Almost Entirely in NDCA

Resonant filed this patent infringement suit in WDTX against Apple on June 1, 2023, alleging infringement of U.S. Patent Nos. 8,093,767, 8,860,337, 9,941,830, and 11,152,882 (the "Asserted Patents").  First Amended Complaint, Dkt. No. 20 ("FAC") at ¶ 1.  Specifically, Resonant accuses "Apple products with Taptic Engine technology, including without limitation iPhone products, MacBook products, and Apple Watch products" of infringing the Asserted Patents.  FAC at Ex. 2 at 1, Ex. 4 at 1, Ex. 6 at 1, Ex. 8 at 1; *see also* FAC at ¶¶ 10, 16, 22, 28.

Since its founding in 1976, Apple has been headquartered in Cupertino, California (in NDCA) and employs more than 36,000 people statewide.  *See* Ex. 1 at 1; Ex. 2 at 3; FAC at ¶ 3. Apple's management, primary research and development, and marketing facilities are all in NDCA.  *See* Ex. 1 at 1; Ankenbrandt Decl. at ¶ 5; Zhang Decl. at ¶¶ 4–8; Spevak Decl. at ¶ 4. Apple engineers who research, design, develop, and implement the Taptic Engines in the accused products are almost all in California, and nearly all reside and work in NDCA from Apple's headquarters.  Zhang Decl. at ¶¶ 4–8.  The engineers who do not work in NDCA are almost all in ██████████, California.  *Id*.  The one engineer who works outside of California resides in ████.  *Id*.  Nearly all Apple employees involved with Apple's patent licensing as well as those knowledgeable about sales and financial information for the accused products likewise reside and

work in NDCA.  Ankenbrandt Decl. at ¶ 5; Spevak Decl. at ¶ 4.  The list below identifies Apple

employees with relevant information in this case and the likely subject matter of their testimony.

- ██ engineers across ██ teams are responsible for and have knowledge of the research, design, development, and implementation of the Taptic Engines in the accused products. Zhang Decl. at ¶¶ 4–8.  Of those, ██ engineers reside and work in NDCA, ████████████████████████████████████. *Id*. None are in Texas. *Id*. None routinely travel to Texas for work, nor do any work with anyone in Texas. *Id*. at ¶ 9.

- Brian Ankenbrandt is a Senior Manager at Apple and is knowledgeable about Apple's intellectual property licensing practices relevant to this case.  Ankenbrandt Decl. at ¶¶ 1, 4. Mr. Ankenbrandt is in NDCA.  *Id*. at ¶ 1.

- Catherine Spevak is a Finance Manager at Apple and is knowledgeable about sales and financial information regarding the accused products.  Spevak Decl. at ¶¶ 1, 4. Ms. Spevak is in NDCA.  *Id*. at ¶ 1.

- Robin Goldberg is a Discovery Manager at Apple who is knowledgeable about Apple's inventory of potential prior art products.  Goldberg Decl. at ¶¶ 1, 3. Ms. Goldberg is in NDCA.  *Id*. at ¶ 1.

Hence, at least ██ Apple employees with relevant knowledge reside in NDCA and ████████████

██. While there may be Apple store employees in WDTX with general knowledge about the

sales of the accused produces in WDTX, those individuals do not have any unique knowledge

relevant to this case and were not involved in the design or development of the Taptic Engines in

the accused products; Apple therefore has not identified any as a relevant witness in this case.

Moreover, Apple's investigation has not identified anyone with relevant information about the

Taptic Engines in the accused products in WDTX.  *See* Ankenbrandt Decl. at ¶ 5; Zhang Decl. at

¶ 9; Spevak Decl. at ¶ 4.

Similarly, the electronic and paper records related to the development of the Taptic Engines

in the accused products are predominantly generated from, stored in, and/or accessible from

NDCA.  Zhang Decl. at ¶ 10.  The financial and licensing documents relevant to this case are

likewise located primarily in NDCA.  Spevak Decl. at ¶ 4; Ankenbrandt Decl. at ¶ 6.  Apple is not

aware of any relevant, unique documents located in Texas.  *See id.*; Zhang Decl. at ¶ 10.

In short, Apple's anticipated witnesses and relevant documents are almost all in California and highly concentrated in NDCA. No anticipated witness, document, or evidence is in WDTX.

### B. Resonant is a Washington Company with No Apparent Ties to Texas

According to the First Amended Complaint, Resonant is "a corporation organized and existing under the laws of the state of Washington, with a place of business at 520 South King Street, Seattle, Washington 98104." FAC, ¶ 2. Robin Elenga, Resonant's founder and president, appears to be based in Seattle, Washington. Ex. 3 at 1. Mr. Elenga is a named inventor on all four Asserted Patents, and the lead inventor on three. Resonant is a patent holding company, and its only apparent operations consist of attempted licensing and litigation related to the Asserted Patents and related patents. *See, e.g.*, Ex. 4 at 1 (a research company's report on RevelHMI, showing a total of six employees including the founder); Ex. 5 at 1 (Resonant's Crunchbase profile, indicating between 1–10 employees); Ex. 6 (Resonant's official website—linked on its LinkedIn and Crunchbase profiles—which is blank); *see also, generally* FAC (Resonant's FAC provides no description of its business other than patent ownership). Resonant does not appear to design or manufacture any product, let alone any product that practices the Asserted Patents. *See id.* Thus, Resonant's relevant witnesses and documents appears to be only in Washington, and Resonant has no apparent ties to WDTX or Texas.

### C. Many Third Party Witnesses are in NDCA and None are in WDTX

Relevant third parties are located in NDCA including: one named inventor of the asserted patents (Brian Marc Pepin), Ex. 7, and



, Zhang Decl. at ¶ 11. Apple's investigation has failed to identify a relevant third party located in WDTX.

### III.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The movant must show "good cause" by demonstrating that the "transferee venue is clearly more convenient" than the transferor district.  *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").

In evaluating convenience, the district court weighs both private and public interest factors.[1]  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.*  The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law."  *Id.*

The convenience of the witnesses is the most important factor.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009); *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No. 6:15-CV-00091, 2016 WL 6909479, at *7 (W.D. Tex. Jan. 28, 2016).  Thus, the proposed transferee forum is "clearly more convenient" where, as here, most potential witnesses and relevant evidence are in the transferee district and few or none are in the transferor venue.  *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *see also In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37

---

[1] The plaintiff's choice of venue is not a distinct factor in the analysis. *Volkswagen II*, 545 F.3d at 314–15.  Nor is the location of counsel.  *Volkswagen I*, 371 F.3d at 206.

(Fed. Cir. 2009); *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1323 (Fed. Cir. 2021); *In re TracFone Wireless, Inc.*, 852 F. App'x 537 (Fed. Cir. 2021); *In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020); *In re Adobe Inc.*, No. 2020-126, 2020 WL 4308164 (Fed. Cir. Jul. 28, 2020); *USTA Tech., LLC v. Google LLC*, Case No. W-22-CA-01214-XR, 2023 WL 4833481, at *3–4 (W.D. Tex. July 26, 2023) (granting motion to transfer venue); *Collaborative Agreements, LLC. v. Adobe Sys. Inc.,* No. 1-14-CV-356, 2015 WL 10818739 (W.D. Tex. Aug. 21, 2015).

## IV.    NDCA IS CLEARLY MORE CONVENIENT THAN WDTX

### A.    This Case Could Have Been Brought in NDCA

A patent infringement case "may be brought in the judicial district where the defendant resides." 35 U.S.C. § 1400(b). And a corporate defendant "resides" in its state of incorporation. *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017). Thus, this case could have been brought in NDCA because Apple is incorporated in California. FAC, ¶ 3.

### B.    The Private Interest Factors Favor Transfer

The private interest factors strongly favor transfer because the relevant witnesses and evidence are almost all in NDCA and none are in WDTX.

#### 1.    Relative Ease of Access to Sources of Proof Strongly Favors Transfer

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345. "In determining the ease of access to sources of proof, the Court will look to the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017).

Here, almost all research, design, development, and implementation of the accused features occurred or presently occurs in NDCA, at or near Apple's Cupertino headquarters. *See* Zhang

Decl. at ¶¶ 4–8. NDCA is the primary location where Apple engineers developed the Taptic Engine, as well as the accused products more generally, and it is also where the engineers who work on the Taptic Engine today now reside. Zhang Decl. at ¶¶ 4–8. Accordingly, electronic documents and source code relating to the Taptic Engines in the accused products were predominantly generated in and are accessed from NDCA. Zhang Decl. at ¶ 10. For the same reason, physical evidence, including Apple's prototypes and potential prior art products relevant to Apple's invalidity defenses, are stored in NDCA.[2] *Id.*; Goldberg Decl. at ¶ 3. Likewise, Apple's financial documents relating to sales of the accused products, as well as Apple's patent license agreements, are predominantly generated in and accessed from NDCA. Spevak Decl. at ¶ 4; Ankenbrandt Decl. at ¶ 6. In addition, third parties with potentially relevant documents, including a named inventor of all Asserted Patents and ███████████████ are in NDCA. *See supra* Section II.C. This also weighs in favor of transfer. *See Koss Corp. v. Plantronics, Inc.*, No. 6:20-CV-00663-ADA, 2021 WL 2075685, *3 (W.D. Tex. May 20, 2021) ("[Movant]'s showing that additional, third-party documents . . . are located in NDCA further tips the scales in favor of transfer."). As such, nearly all the relevant sources of proof are in NDCA.

Importantly, Apple is not aware of any relevant sources of proof uniquely in WDTX or Texas. None of Apple's work relating to the accused technology was performed in WDTX. *See* Zhang Decl. at ¶¶ 9–10; Spevak Decl. at ¶ 4; Ankenbrandt Decl. at ¶ 6. Moreover, Resonant does

---

[2] For example, under Resonant's apparent theory of infringement for claim 1 of the '830 Patent, FAC at Ex. 6, and upon information and belief, Apple's iPhone 4 and iPhone 4S each has a linear resonance actuator with a housing, a moveable component, a power supply, user-input features, a driving component that drives the moveable component to oscillate within the housing; and a control component that controls supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by one or more stored values.

not allege that the claimed invention of the Asserted Patents was developed in WDTX. And there is no indication that Resonant practices any of the asserted patents in WDTX (or anywhere else).

The only tie to Texas Resonant has identified is several Apple office locations in Texas (FAC at ¶ 7), but these are irrelevant to the issues in this case. *See In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022), *cert. denied sub nom. CPC Pat. Techs. PTY Ltd. v. Apple Inc.*, 143 S. Ct. 206, 214 L. Ed. 2d 80 (2022) ("[A] party's 'general presence in a particular district' does not alone 'give that district a special interest in the case.'" (internal citation removed)). Sources of proof must be "relevant to the issues in this case" to affect the transfer analysis. *USTA*, 2023 WL 4833481 at *5. Here, there are no unique sources of proof relevant to this case in those offices. *See* Zhang Decl. at ¶ 10; Spevak Decl. at ¶ 4; Ankenbrandt Decl. at ¶ 6. Even if, hypothetically, some tidbits of relevant information are in WDTX that Apple's investigation so far has not uncovered, "[t]he mere presence of records in both the NDCA and the WDTX does not render this factor neutral. The quantity and substance of [Apple]'s documents bearing on the accused instrumentalities, which are created and maintained in the NDCA, are of significantly greater importance to the transfer analysis." *Id.*; *see also Apple*, 979 F.3d at 1339–40 ("[M]ovant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer.").

Given that NDCA is the center of the relevant sources of proof and WDTX has no known unique sources of proof, this factor clearly favors transfer.

### 2.    Availability of Compulsory Process Favors Transfer

The availability of compulsory process also favors transfer in this case. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (stating a court's ability to compel testimony and the production of documents through its subpoena power is "an important factor in the § 1404(a) calculus."). The compulsory process factor focuses on "non-party witnesses whose attendance

may need to be secured by a court order." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019) (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014); *Hoffman-La Roche*, 587 F.3d at 1337–38.

A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Moreover, the ability to compel live trial testimony is crucial for evaluating a witnesses' credibility. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

Here, the availability of compulsory process clearly favors transfer because several potentially relevant third-party witnesses are in NDCA, and none are in WDTX. *See supra* Section II.C.; *In re Hulu LLC*, No. 2021-142, 2021 WL 3278194, *4 (Fed. Cir. Aug. 2, 2021) (finding this factor favors transfer where "multiple third-party witnesses . . . are overwhelmingly located within the subpoena power of only the transferee venue"); *In re Google LLC*, No. 2023-101, 2023 WL 1425780, *3 (Fed. Cir. Feb. 1, 2023) (finding that eleven witnesses in the transferee district versus three witnesses in the transferor district weighs "firmly" in favor of transfer); *USTA*, 2023 WL 4833481 at *4–5 (similar).

At least ■ potentially relevant non-party witnesses are subject to compulsory process in the NDCA District Court, which has subpoena power over individuals in California. *See In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, *3 (Fed. Cir. Nov. 15, 2021) (noting that third

9

parties with office in California are subject to NDCA's subpoena power).  One is Brian Marc Pepin, a named inventor on all Asserted Patents, who resides in NDCA.  *See supra* Section II.C. The other ████ non-party witnesses are ████████████████████████████ ██████████████████████. *See supra* Section II.C.

Because the NDCA has usable subpoena power over the third-party witnesses likely to possess relevant information in this case, and WDTX does not, this factor clearly weighs in favor of transfer.  *See Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.").

### 3.    Convenience of Witnesses Strongly Favors Transfer

The convenience of witness factor is "probably the single most important factor in [the] transfer analysis."  *Genentech*, 566 F.3d at 1343.  "When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen I*, 371 F.3d at 204–05.

The convenience of witnesses strongly favors transfer in this case, as nearly all Apple witnesses and third-party witnesses are in NDCA, and no relevant witness is in WDTX.  *See supra* Section II; *see also, e.g.*, *TracFone*, 852 F. App'x at 539–40; *Apple*, 979 F.3d at 1341–42; *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 (Fed. Cir. Sept. 25, 2018); *Genentech*, 566 F.3d at 1343; *Via Vadis, LLC v. Netgear, Inc.*, No. 14-cv-809, 2015 WL 10818675, at *2 (W.D. Tex. July 30, 2015); *Datascape, Ltd. v. Dell Techs., Inc.*, No. 6:19-cv-00129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019); *Uniloc USA, Inc. v. Apple Inc.*, No. A-18-CV-990-LY, 2019 WL 2066121, at *3 (W.D. Tex. Apr. 8, 2019); *Polaris Innovations*, 2016 WL 7077069, at *9; *InfoGation Corp. v. Google LLC*, No. 6:20-CV-00366-ADA, 2021 WL 5547070, at *4 (W.D. Tex. Apr. 29, 2021).

████████████ the engineers involved in, or knowledgeable about, research, design, development, and implementation of the Taptic Engines in the accused products are in California, and nearly all are in NDCA.  *See supra* Section II.A.  Apple personnel with relevant knowledge about licensing, finance, and potential prior art are also in NDCA.  *Id*.  And a named inventor of each Asserted Patent is in NDCA.  *See supra* Section II.C.

Each of these witnesses is a short car ride from the NDCA courthouse (e.g., 15 minutes from San Jose), but more than 1,000 miles (as the crow flies) from Midland, Texas, with no direct flights available.  *See* Exs. 8–9.  If this case proceeds in WDTX, testifying will require Apple's NDCA witnesses to fly for at least six hours, including at least one layover.  *Id*.  That estimate does not account for time traveling to and from airports, waiting at the airports, renting cars or finding rides, and traveling to and from hotels.  ████████████████████ the few Resonant witnesses in Washington can take a direct, 1.5- or 2-hour flight to NDCA, respectively, but would have comparable burdens to NDCA witnesses if required to testify in WDTX.  *Compare* Exs. 10–11 *with* Exs. 12–13.

This travel burden is not insignificant and has been cited as a key reason why transfer is often appropriate.  *See, e.g.*, *Volkswagen II*, 545 F.3d at 317 (witnesses may suffer "personal costs associated with being away from work, family and community"); *In re Acer*, 626 F.3d at 1255 (noting that requiring multiple employees of a party to travel from NDCA to Eastern Texas would "incur significant expenses for airfare, meals, and lodging, as well as losses in productivity from time spent away from work"); *Apple*, 979 F.3d at 1341–42 ("Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.  Furthermore, the task of scheduling fact witnesses so as to

minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.").

Hence, the most important factor in the transfer analysis—the convenience of the witnesses—clearly and heavily favors transfer to NDCA.

### 4.    Other Practical Problems are Neutral or Slightly Favor Transfer

The "other practical problems" factor is neutral transfer as well.  This factor assesses whether a transfer would impact judicial efficiency.  Here, there are no practical considerations favoring either venue because neither WDTX nor NDCA has any previous experience with the Asserted Patents and there are no related lawsuits pending in either district.  *See USTA*, 2023 WL 4833481 at *6.

### C.    The Public Interest Factors Favor Transfer

Like the private interest factors, the public interest factors favor transfer as well because NDCA and WDTX have comparable times-to-trial and NDCA has a strong local interest in this matter.

### 1.    Court Congestion is Neutral or Slightly Favors Transfer

The relevant inquiry under the court congestion factor is the "speed with which a case can come to trial and be resolved."  *Genentech*, 566 F.3d at 1347; *Apple*, 979 F.3d at 1343.  This factor is "the most speculative" and is given little weight compared to the other transfer factors. *Genentech*, 566 F.3d at 1347.  In fact, the Court congestion factor cannot weigh against transfer where, as here, the plaintiff is a non-practicing entity.  *See In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023) (holding it is "a clear abuse of discretion to accord this factor any weight" where the plaintiff "is not engaged in product competition in the marketplace"); *In re Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011) (similar).

Nonetheless, the Federal Circuit has "noted that 'the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics.'" *Apple*, 2021 WL 5291804, at \*4 (quoting *In re Juniper Networks*, 14 F.4th at 1322); *see also Apple*, 979 F.3d at 1343–44 (similar). And, in one decision, WDTX acknowledged that NDCA has a shorter time to trial for patent cases than WDTX. *Uniloc USA Inc. v. Box, Inc.*, No. 1:17-CV-754-LY, 2018 WL 2729202, at \*4 (W.D. Tex. June 6, 2018) ("Patent cases . . . move more quickly than other civil cases, and the average time to trial in Northern California is marginally faster than in Western Texas.").

Hence, the court congestion factor is neutral or slightly favors transfer to NDCA.

### 2.    Local Interest Strongly Favors Transfer

The local interest factor strongly weighs in favor of transfer. "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. Thus, the "local interest" factor looks to the location(s) of "events that gave rise to [the] suit," such as where "the accused products were designed, developed, and tested." *Apple*, 979 F.3d at 1345; *see also Apple*, 2022 WL 1196768 at \*3. It does not look for "connections to each forum writ large." *In re DISH Network L.L.C.*, 856 F. App'x 310, 310 (Fed. Cir. 2021).

NDCA has strong local interests in this matter because: (1) Apple's research, design, development, and implementation of the accused technology primarily takes place and is ultimately managed there; (2) Apple's headquarters and the large portion of its workforce are there; and (3) all or nearly all of Apple's likely witnesses and evidence are there. *See supra* Section II.A. As such, NDCA's interest in this matter is "self-evident" because it "calls into question the work and reputation of several individuals residing" in NDCA. *See Hoffman-La Roche*, 587 F.3d at 1336.

The local interest factor thus strongly favors transfer.

### 3.    Familiarity with the Governing Law and Conflicts of Law are Neutral

Finally, the last two public interest factors—familiarity with the governing law and conflicts of law—are neutral; there are no perceived conflicts of law, and both districts are equally qualified to apply patent law.  *See In re TS Tech.*, 551 F.3d 1315, at 1320–21 (Fed. Cir. 2008); *Magic Cross Ranch, L.P. v. Manion*, No. 3:12-CV-00541-P, 2012 WL 13027449, at *3 (N.D. Tex. Sept. 25, 2012) ("The Court finds that the other public interest factors are neutral. Both [districts] are equally capable of applying the law that will govern the case. No issues exist which suggest any potential problems of conflict of laws or applying foreign law.").

As such, consistent with the private interest factors, each of the public interest factors favor transfer as well.

## V.    CONCLUSION

For the reasons discussed above, Apple respectfully requests a transfer of this case to NDCA, as it is clearly the more convenient forum.


Date: October 10, 2023                                Respectfully submitted,

                                                      */s/ Karrie Wheatley*_____
                                                      Roger A. Denning (Cal. Bar No. 228998)
                                                      denning@fr.com
                                                      Ryan O'Connor (Cal. Bar No. 304815)
                                                      (*pro hac vice forthcoming*)
                                                      oconnor@fr.com
                                                      Oliver Richards (Cal. Bar No. 310972)
                                                      orichards@fr.com
                                                      Joy Backer Kete (Mass. Bar No. 694323)
                                                      (*pro hac vice forthcoming*)
                                                      kete@fr.com
                                                      James Yang (Cal. Bar No. 323287)
                                                      (*pro hac vice forthcoming*)
                                                      jyang@fr.com
                                                      FISH & RICHARDSON P.C.

12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Ruffin B. Cordell (Tex. Bar No. 04820550)
cordell@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave., SW, Suite 1000
Washington, DC 20024
Tel: (202) 783-5070 / Fax: (202) 783-2331

Nitika Fiorella (Del. Bar No. 5898)
(*pro hac vice forthcoming*)
ngupta@fr.com
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Tel: (302) 652-5070 / Fax: (302) 652-0607

Kathryn Quisenberry (Tex. Bar No. 24105639)
quisenberry@fr.com
Karrie Wheatley (Tex. Bar No. 24098605)
wheatley@fr.com
FISH & RICHARDSON P.C.
909 Fannin Street, Suite 2100
Houston, TX 77010
Tel: (713) 654-5300 / Fax: (713) 652-0109

Steven J. Wingard (Tex. Bar No. 00788694)
swingard@scottdoug.com
SCOTT, DOUGLAS & McCONNICO, L.L.P.
303 Colorado Street, Suite 2400
Austin, Texas 78701
Tel: (512) 495-6300 / Fax: (512) 495-6300

***Attorneys for Defendant Apple Inc.***

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rules CV-7(G), counsel for the parties met and conferred telephonically on October 2, 2023.  Peter Tong attended for Plaintiff.  Steve Wingard attended for Defendant. The parties discussed their positions on this motion.  The discussions conclusively ended in an impasse, leaving an open issue for the court to resolve.  Plaintiff indicated that it opposes this motion.

*/s/ Steve Wingard*
Steve Wingard

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on October 10, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.  I further certify that all counsel of record who have appeared in this case are being served with an unredacted copy of the foregoing via electronic mail.

*/s/ Karrie Wheatley*
Karrie Wheatley