**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **RESONANT SYSTEMS, INC., d/b/a** | § | <span style="color:red">**PUBLIC REDACTED**</span> |
| **REVELHMI,** | § | <span style="color:red">**VERSION**</span> |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **MO:23-CV-00077-ADA** |
| | § | |
| **APPLE, INC.,** | § | |
| *Defendant.* | § | |

## ORDER DENYING DEFENDANT'S MOTION TO TRANFER VENUE

This is a patent infringement case that Apple wishes to transfer to the Northern District of California. At one point in time, a Resonant entity made personal vibrators for consumer use. Now doing business as RevelHMI, Resonant has moved on to haptic motors, naming Apple as its only relevant competitor. Here, Resonant asserts four patents related to improvements in haptic feedback devices which it believes several generations of Apple watches, phones, and laptops infringe. Resonant also believes that amplifier components supplied to Apple by Cirrus Logic, Inc. of Austin contribute to Apple's infringement.

Ultimately, though the parties seem to agree that NDCA is proper, Apple fails to show that "the destination venue is clearly more convenient than the venue chosen by the plaintiff." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022). Having considered the motion and the relevant briefing, the Court finds that the motion should be **DENIED**.[1] The Court also finds that Apple's motion to stay the case pending entry of this order is also **DENIED AS**

---

[1] ECF No. 36. Citations to the record will be to the unredacted versions filed under seal unless otherwise specified.

**MOOT**.[2] Resonant's pending motion to strike[3] is also **DENIED AS MOOT**; Resonant's sur-reply[4] addresses the same issues favoring striking Apple's late-coming declaration. Finally, Resonant's argument in the alternative to transfer this case to Austin should the Court find transfer is warranted is **DENIED**.[5]

### BACKGROUND

Resonant Systems, Inc. accuses Apple, Inc. of infringing U.S. Patent Nos. 8,093,767, 8,860,337, 9,941,830, and 11,152,882, which relate to improvements in haptic feedback devices.[6] The accused Apple products are (1) second generation iPhones (iPhone 6s, 6s Plus, 7, 7 Plus, 8, 8 Plus, X, XR, XS, XS Max, 11, 11 Pro, 11 Pro Max, and SE), (2) third generation iPhones (iPhone 14, 14 Plus, 14 Pro Max), (3) MacBooks (MacBook Pro from 2015 on, MacBooks and MacBook Air from 2018 on), and (4) first and second generation Apple watches (Series 1, 2, 3, 4, 5, SE, 6, 7, SE, 8 and Ultra). Resonant is a Washington corporation[7] and sole owner by assignment of all right, title, and interest in the asserted patents.[8] Apple is a California corporation with a principal place of business in Cupertino, California[9] and maintains and office in Austin.[10]

Apple filed this motion to transfer under the belief that the Northern District of California is a more convenient forum than the Western District of Texas.[11] Resonant believes this case

---

[2] ECF No. 58.
[3] ECF No. 52.
[4] ECF No. 67.
[5] ECF No. 36.
[6] ECF No. 20 at 1.
[7] *Id* at 2.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] ECF No. 36.

should remain in WDTX but proposes the Austin Division of the Western District of Texas as a more convenient forum, should the Court feel that transfer is appropriate.[12]

## LEGAL STANDARD

Section 1404(a) permits transfers of civil cases for "the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought."[13] That section intends to give discretion to the district court "to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'"[14] It also aims to prevent "waste of time, energy, and money and protect the litigants, witnesses and the public against unnecessary inconvenience and expense."[15] Regional circuit law governs Section 1404 motions in patent cases.[16]

The threshold inquiry is whether the civil action "might have been brought" in the destination venue.[17] Once that inquiry is met, the Court determines whether the moving party has "clearly establish[ed] good cause [for transfer] by clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice."[18] "It is the movant's burden—and the movant's alone—to adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice."[19]

---

[12] ECF No. 43.

[13] 28 U.S.C. § 1404(a).

[14] *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

[15] *Van Dusen*, 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960)) (cleaned up).

[16] *In re TS Tech U.S. Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

[17] *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*").

[18] *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (quoting *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (cleaned up).

[19] *Id.* (cleaned up).

Here, "good cause" requires the movant to show that its chosen venue is "clearly more convenient."[20] The burden is not that the alternate venue is more convenient; it must be "clearly more convenient."[21] "[T]he fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer."[22] This "clearly more convenient" standard is something more than a mere preponderance.[23] The Fifth Circuit recently clarified that to meet its burden on "good cause" a movant must show "(1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue."[24]

Ultimately, a proposed venue's convenience turns on eight factors through which "the defendant's proffered venue is measured against the plaintiff's chosen venue."[25] "No factor is of dispositive weight."[26] In a similar vein, a district court must not conduct a "raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score.'"[27] And "[w]here there is no demonstration by the movant, let alone a clear one, the [district] court cannot weigh a factor against the non-movant and in favor of transfer."[28] These eight factors divide into four private interest factors and four private interest factors.

The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of

---

[20] *Id.*
[21] *Id.*; *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).
[22] *Def. Distributed*, 30 F.4th at 433.
[23] *Id.* at 805 n. 3 (citing *Def. Distributed*, 30 F.4th at 433); *see also Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-00118-JRG, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).
[24] *In re Clarke*, 94 F.4th at 508 (emphases in original).
[25] *In re Clarke*, 94 F.4th at 510 n.9.
[26] *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).
[27] *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013).
[28] *Def. Distributed*, 30 F.4th at 434.

attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[29] The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law."[30] Courts assess these factors as they were at the time of the filing rather than through knowledge of the defendant's forum preference gained in hindsight.[31]

Of course, "the district court has broad discretion in deciding whether to order a transfer."[32] But "a district court abuses its discretion by denying transfer when 'not a single relevant factor favors the [plaintiff's] chosen venue.'"[33] A district court likewise "abuses its discretion by denying a motion to transfer when 'virtually all of the events and witnesses regarding the case . . . are in the transferee forum.'"[34]

## DISCUSSION

## I.     Motion to Transfer

Section 1404(a)'s threshold inquiry looks at whether this case could initially have been brought in the destination venue—the Northern District of California. Neither party disputes that venue could be proper in the Northern District of California. The Court therefore moves on to the

---

[29] *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

[30] *Id.*

[31] *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

[32] *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987)).

[33] *In re TikTok*, 85 F.4th at 358 (quoting *Volkswagen II*, 545 F.3d at 318).

[34] *Id.* at 366 (quoting *In re Radmax, Ltd.*, 720 F.3d at 290.).

second part of the transfer inquiry: examination of the private and public interest factors to determine whether NDCA is a "clearly more convenient" forum than WDTX.

## II.    Private Interest Factors

The Court evaluates the private interest factors in turn: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.[35]

### A.    The relative ease of access to sources of proof

This factor "focuses on the location of documents and physical evidence relating to the case."[36] "[T]he question is *relative* ease of access, not *absolute* ease of access."[37] "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."[38] The same is true "where the current district lacks any evidence relating to the case."[39]

"[W]hen the vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis."[40] On the other hand, "[t]he location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature."[41] "In the absence of physical evidence, this factor entails at least two discrete

---

[35] *Volkswagen II*, 545 F.3d at 315.
[36] *In re TikTok*, 85 F.4th at 358 (cleaned up).
[37] *In re Radmax, Ltd.*, 720 F.3d at 288 (emphases in original).
[38] *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).
[39] *In re TikTok*, 85 F.4th at 358.
[40] *Id.* (quoting *In re Planned Parenthood*, 52 F.4th at 630 (cleaned up).
[41] *In re Planned Parenthood*, 52 F.4th at 630.

inquiries when addressing electronic documents: the locations where electronic documents are stored, and the locations of the creators and custodians of the electronic documents."[42]

Apple argues that virtually all research, design, development, and implementation of the features accused of infringement occur in NDCA at or near its Cupertino headquarters.[43] Apple engineers that work on the Taptic Engine, and other relevant teams, work and reside in NDCA.[44] Because of their positions, these individuals generate and store physical documents, electronic documents, physical prototypes and potential prior arts in NDCA, and access relevant source code in NDCA.[45] ███████████████████████████████████████████████████████████ ███████████████████████████████.[46] Apple likewise argues that its relevant sales documents and patent license agreements are predominantly generated in and accessed from NDCA,[47] some portion of which require access rights.[48] And ████████████████████████████████████████ and a named inventor of the asserted patents exist or reside in NDCA.[49] As to WDTX, Apple argues that it is unaware of any relevant sources of proof uniquely in WDTX and that Apple employees performed no relevant work on the accused products in WDTX.[50] On briefing alone, it seems certain that a considerable amount of evidence exists in NDCA—physical and electronic sources of proof are accessed in NDCA and custodians with access rights are likewise in NDCA.

---

[42] *Webroot, Inc. v. AO Kaspersky Lab*, No. 6:22-CV-00239-ADA-DTG, 2024 WL 171705, at *4 (W.D. Tex. Jan. 16, 2024) (citing *Volkswagen II*, 545 F.3d at 316; *Def. Distributed*, 30 F.4th at 434 & 433 n.25; *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021); *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021).
[43] ECF No. 36-1 at 12.
[44] *Id.*
[45] *Id.*
[46] *Id.* at 2, 3.
[47] *Id.* at 12.
[48] ECF No. 36-2, 36-3 and 35-4.
[49] ECF No. 36-1 at 12.
[50] ECF No. 36-1 at 12.

Resonant, on the other hand, points to three sources of evidence: (1) patent prosecution files, original handwritten notes, and physical samples of "vibrators, boards, or related equipment"[51] in counsel's possession in their Dallas offices, (2) electronic documents stored on Mr. Elenga's portable laptop,[52] and (3) "so much evidence that it would be unduly burdensome" for Austin-based third-party component supplier, Cirrus Logic, to investigate and quantify.[53] But of these three categories, only Cirrus Logic has access to sources of proof within WDTX. Resonant's Dallas counsel are, of course, in NDTX and the evidence in their possession are artifacts of litigation.[54] And Mr. Elenga lives in Seattle, Washington and would travel to Texas with the electronic files stored on his laptop.[55] His willingness that brings him to other litigation in Texas, however, still requires Elenga to "bring" evidence with him into WDTX.[56]

At a glance, this factor would seem to favor transfer.

The issue is that Apple has failed to provide the factual foundation necessary to evaluate the relative convenience of the present and proposed venues.[57] Apple's failure takes on two flavors. *First*, Apple supports its briefing with declarations that are too vague and generalized[58] that, to

---

[51] ECF No. 43-12 at 13–14; ECF No. 43-13 at 13–14.

[52] ECF No. 43-12 at 14.

[53] *Id.*

[54] *RLI Ins. v. Allstate Cty. Mut. Ins.*, Civ. A. No. 3:07-CV-1256-M, 2008 WL 2201976, at *2 (N.D. Tex. May 28, 2008) (citing *Volkswagen I*, 371 F.3d at 206) ("Attorneys may not manipulate the transfer analysis simply by moving documents to their offices.").

[55] ECF No. 43-12 at 14; ECF No. 43-10 at 9.

[56] *In re TikTok*, 85 F.4th at 359 ("The only way it can be accessed there is if out-of-district individuals travel into the district, "bringing" the electronic evidence with them.").

[57] *See Hammers v. Mayea-Chang*, No. 2:19-CV-00181-JRG, 2019 WL 6728446 (E.D. Tex. Dec. 11, 2019), 2019 WL 6728446, at *5 ("When the movant fails to provide the factual foundation that is necessary to evaluate the relative convenience of the present and proposed venues, the Court lacks a basis to conclude that the proposed venue is "clearly more convenient" than the present venue. Put another way, if the facts governing convenience are not clearly set forth, the Court cannot conclude that the proposed venue is 'clearly more convenient.' Any such unsupported request to transfer to such proposed venue must be denied.") (citations omitted).

[58] *In re Apple Inc.*, 743 F.3d 1377, 1378–79 (Fed. Cir. 2014).

find this factor favors transfer, the Court would have to speculate in its favor despite a duty to "draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party."[59] "[F]ailure to identify with specificity as to the documents and the location of the documents is a failure of the moving party to meet its burden on transfer."[60] *Second*, and perhaps more irksome, Apple chose declarants who lack personal knowledge (1) as to employees located at Apple's Austin campus and (2) any access to relevant evidence those employees may possess. The Court therefore cannot meaningfully determine whether Apple's sources of proof are "relatively easier to access" in NDCA than WDTX. Because the standard is one of "relative"[61] ease of access—the burden of which is on the movant to show—Apple here must do more than thumb one side of the scales to meet its burden. As iterated recently by the Fifth Circuit, "[a]t bottom, the transfer factors are *relative*. For each factor, the defendant's proffered venue is measured against the plaintiff's chosen venue."[62]

Apple has pulled this latter stratagem before—as Resonant correctly points out[63]—and the Waco division has warned Apple against these sorts of limiting declarations:

---

[59] *Id* at 4. ("When deciding a motion to transfer under § 1404(a), the court may consider undisputed facts outside of the pleadings, such as affidavits or declarations, but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party.") (citing 5B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 1352 (3d ed. 2013) ("A district court may examine facts outside the complaint to determine whether its venue is proper. And . . . . the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff."); *accord Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 492–93 (5th Cir. 2018) ("Venue issues are generally reviewed for abuse of discretion . . . . '[V]iew[ing] all the facts in a light most favorable to the plaintiff,' *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237 (5th Cir. 2009), 'the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments.' *Id.* at 238.") (alterations in original).

[60] *Diem LLC v. BigCommerce, Inc.*, No. 6:17-CV-00186-JRG, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017).

[61] *In re TikTok*, 85 F.4th at 359 (citing *In re Radmax, Ltd.*, 720 F.3d at 288).

[62] *In re Clarke*, 94 F.4th at 510, n.8, n.9 (5th Cir. 2024) (footnotes omitted).

[63] ECF No. 58-1 at 3; ECF No. 67 at 6–7.

Worst of all, the Rollins Declaration uses language that carefully limits the scope of declared facts to his personal, selectively fed knowledge. For example, the Mr. Rollins's supplemental declaration states, 'I am not aware of any Apple employees located in WDTX who worked on the research, design, or development of the Accused Features.' Then, his qualified statements are cited by Apple's attorneys in transfer motions as though they are authoritative truths. For example, 'Apple's sources of proof are located in or around NDCA. There are no sources of proof located in WDTX.' The only evidentiary value that paragraph three of the supplemental Rollins declaration offers is that one attorney-prepared, financial manager at Apple lacks personal knowledge about the thousands of Apple engineers who work in the WDTX—information that a financial manager at Apple has no reason to know without thorough investigation. Except for a vague statement that he reviewed unidentified corporate records and spoke to certain employees, the Rollins Declaration contains no description of the methodology he used to find all Apple engineers who work in WDTX and to then determine their relevance. So, [this] Court has no reason to rely on Mr. Rollins as an authoritative or knowledgeable declarant on this topic.[64]

Indeed, Apple time and time again supplies declarants who are unaware of sources of proof in WDTX, are unaware of any Texan counterparts who might possess them, and who fail to investigate either when moving to transfer patent cases back to NDCA.[65]

With these two issues in mind, Apple declarants Zhang,[66] Spevak,[67] and Ankenbrandt[68] essentially state that they are wholly unaware aware of the goings on of Apple's Texas campus and at the same time fail to support Apple's assertions that the bulk of Apple's sources of proof are in NDCA. By their own declarations, each Apple representative respectively knows nothing of:

(1) Any Texas-based Apple employees who might possess relevant sources of proof. Doing so ignores the ▮▮▮▮ employees in engineering, software, finance and marketing positions at Apple's Austin campus and whether any custodians might exist in WDTX.

---

[64] *Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-CV-00579-ADA, 2022 WL 1667561, at *2 (W.D. Tex. May 25, 2022) (citations to the record omitted).

[65] *Scramoge Tech. Ltd.*, 2022 WL 1667561, at *3. *Scramoge* collects more than twelve declarations from the same offending Apple declarant—not yet presented in this suit—who provided similar faulty declarations. Perhaps that case put an end to use of Apple's "professionally paid venue witness." *Id.* What matters here is Apple appears to be up to some of its old tricks nonetheless.

[66] ECF No. 36-4.

[67] ECF No. 36-3.

[68] ECF No. 36-2.

(2) Any access rights those employees may hold to confidential electronic documents. In fact, Apple's declarants do not clearly describe which electronic documents require access rights and which do not, nor do they give the Court any idea as the relative proportion of each.

(3) The existence of any working files or documents related to patent licensing in WDTX.

(4) The existence of *physical* sales and financial reports in WDTX—or NDCA, for that matter. Apple's declarant speaks only to electronic data sets accessed in NDCA.

(5) The existence of any "physical documents or things (including prototypes and papers)"[69] in WDTX related to the relevant Apple engineering and design teams—to name a few, ███████████████████████████████████████████████████████████████████████ ████████████████████ It is also unclear whether persons outside these teams have access or access rights to electronic documents.

Ankenbrandt, Apple's patent licensing representative, is also unaware of the physical location of the data centers that store "many" of his team's records.[70] Zhang can only state that the design and engineering teams "generate" electronic documents in California, "and mostly in NDCA," and are accessed in NDCA.[71] Spevak, on the other hand, knows that either some or all of Apple's sales and financial data are stored in data centers in ███████████████████████ (but whether anyone outside her team holds the proper credentials to access these documents is wholly unstated).[72]

Perhaps most troubling, Zhang only declares as to his personal knowledge related to Taptic Engines.[73] It is therefore unclear to what extent his declaration limits the scope of the accused components. Resonant points out that his declaration ignores at least the A9–A17 chips, the M1 chip, or M2 chip—and other accused components—which Resonant contends are infringing.[74] It is further unclear whether Zhang can meaningfully speak for the other five design and engineering

---

[69] ECF No. 36-4 at 3.
[70] ECF No. 36-2 at 3.
[71] ECF No. 36-4 at 4.
[72] ECF No. 36-3 at 2.
[73] ECF No. 36-4 at 4.
[74] ECF No. 67 at 8.

teams, as Zhang spends no time whatsoever describing the interplay between teams or whether he has any oversight over them.[75]

Worse still, these qualified statements are then cited by Apple's attorneys "as though they are authoritative truths."[76] For example—"Importantly, Apple is not aware of any relevant sources of proof uniquely in WDTX or Texas."[77] And—"Here, there are no unique sources of proof relevant to this case in those offices."[78] And—"No unique electronic evidence is in WDTX."[79]

Of course, the Apple declarants' lack of awareness could be explained away by, for instance, description of how each reached their conclusions. But Apple's declarants do not include a description of the methodology used to find all relevant sources of proof in WDTX. Apparently Resonant sought such methodology via interrogatory, but Apple refused.[80] In any event, the Fifth Circuit in *In re Clarke* recently iterated that it is an error to uncritically accept a movant's conclusory assertions.[81] Ultimately, the Zhang, Spevak, and Ankenbrandt Declarations show that

---

[75] *See* ECF No. 36-4.

[76] *See Scramoge Tech. Ltd.*, 2022 WL 1667561, at *3.

[77] ECF No. 36-1 at 12.

[78] *Id.* at 13.

[79] ECF No. 46-1 at 7.

[80] ECF No. 43-9 at 11. (Resonant Interrogatory No. 5: "Explain the complete methodology used by each of Apple's declarants to form the basis of their declarations supporting Apple's Motion to Transfer, including but not limited to the scope of any searching or investigation performed, documents and things reviewed to form the basis of their statements, assumptions made, and limits of investigation." Apple's Response to Interrogatory No. 5: "Apple objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, work product doctrine or immunity, common legal interest privilege, joint defense privilege, and/or any other applicable privilege or protection. Apple further objects to this Request as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case with respect to phrases such as "the complete methodology" and "limits of investigation." Apple further objects to this Interrogatory to the extent it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Apple further objects to this Interrogatory to the extent it is not bounded by any relevant time period or geographic scope.").

[81] *In re Clarke*, 94 F.4th at 506 (citing *In re TikTok*, 85 F.4th at 360); *See also Def. Distributed*, 30 F.4th at 434 ("Here, however, the district court erred by uncritically accepting the NJAG's

each lack *personal knowledge* about Apple's WDTX potential for sources of proof. The limited nature of these declarations likewise do not allow the Court to understand which electronic documents are accessible in each district, which are limited by access rights, whether Apple employees in WDTX have those access rights, whether physical sources of proof also exist in WDTX, and where the data centers are located that store shared documents. The Apple declarations therefore prohibit the Court from meaningfully comparing NDCA's apples to WDTX's apples. Put another way, as briefed, the Court cannot weigh *relative ease* of access to Apple materials between the two districts.

To its credit, Resonant sought Apple's sources of proof located in WDTX during venue discovery, but Apple objected and declined to produce.[82] Apple likewise stated that it did not generate a list of Texas employees that have worked on the accused products when requested because "Apple does not maintain a company-wide list of all the products that each employee works on. This is because Apple ███████████████████████████████████."[83] Resonant also sought hit counts on key phrases to determine potential custodians in Austin, but Apple refused, citing this Court's standing order and claiming Resonant failed to show good cause for doing so.[84] For whatever reason, Resonant did not seek the Court to compel discovery.

The Court also notes a lack of evidentiary support that there are any sources of proof in the hands of Apple's half a dozen third-party component suppliers in NDCA.[85] Apple instead made unsupported assertions in its briefing.[86]

---

conclusory assertions that 'the sources of proof relevant to these issues (including any non-party witnesses) are all in New Jersey.'").

[82] ECF No. 43-12 at 9–10.

[83] ECF No. 43-12 at 8; ECF No. 43-8 at 3.

[84] ECF No. 43-9 at 11.

[85] ECF No. 36-4 at 4.

[86] ECF No. 36-1 at 9; ECF No. 36-1 at 12 (referring back to first cite).

For these reasons, the Court finds that Apple failed to "adduce evidence"[87] in support of transfer and likewise failed to make a comparative analysis between the current and proposed venues. This factor is therefore neutral if not slightly disfavoring transfer when acknowledging Cirrus Logic's sources of proof in WDTX.[88]

## B. The availability of compulsory process to secure the attendance of witnesses

Rule 45 governs a court's subpoena power.[89] A court has subpoena power over witnesses that live or work within 100 miles of the courthouse[90] and over residents of the state in which the district court sits if the person is a party or party's officer—non-party residents may be compelled so long as their attendance would not cause them to incur "substantial expense."[91]

Ultimately, this factor considers the availability of compulsory process to secure the attendance of witnesses.[92] "This factor favors transfer where 'non-party witnesses . . . are outside th[is] District's subpoena power' and 'a proper venue that does enjoy absolute subpoena power for both depositions and trial' is available."[93] In a similar vein, the Federal Circuit has held that this factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue."[94]

The rub is what to do with the presumption of unwillingness. The Federal Circuit has "rejected the proposition that the compulsory witness factor is irrelevant unless the witnesses in

---

[87] *In re Clarke,* 94 F.4th at 508 (quoting *Volkswagen II*, 545 F.3d at 315).
[88] *Def. Distributed*, 30 F.4th at 434.
[89] FED. R. CIV. P. 45.
[90] FED. R. CIV. P. 45(c)(1)(A).
[91] FED. R. CIV. P. 45(c)(1)(B)(i)-(ii)).
[92] *In re TikTok*, 85 F.4th at 360 (citing *Volkswagen II*, 545 F.3d at 315).
[93] *Id.* (citing *Volkswagen II*, 545 F.3d at 316).
[94] *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech, Inc.*, 566 F.3d at 1345).

question have expressly indicated an unwillingness to testify voluntarily."[95] This same line of cases has spun off a presumption of unwillingness "when there is no indication that a non-party witness is willing," based in part on the Federal Circuit's observation in *In re HP Inc.* that EDTX practiced the presumption.[96] But these cases precede recent opinions handed down by the Fifth Circuit in *Planned Parenthood* and *In re TikTok* that held this factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify."[97]

Apple argues that at least six potentially relevant third-party witnesses are in NDCA and none are in WDTX.[98] One is Brian Marc Pepin, a named inventor on all asserted patents, while the other five are third-party component suppliers for Apple's Taptic Engines.[99] As to Pepin, Resonant argues that he should be given less weight than coinventor Elenga because Pepin no longer works at Resonant and his knowledge will likely be a duplicative subset of Elenga's knowledge.[100] Even so, Apple does not allege or show that Pepin is unwilling.[101] The closest Apple comes is stating for the first time in its reply that it "intends to serve a subpoena on Mr. Pepin."[102]

---

[95] *In re Atlassian Corp. PLC*, No. 2021-177, 2021 WL 5292268, at *2 (Fed. Cir. Nov. 15, 2021) (citing *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *7 (Fed. Cir. Sept. 27, 2021)); *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021).

[96] *In re HP Inc.*, 2018 WL 4692486, at *3 n.1 (noting that "even the Eastern District of Texas's own cases have held that, when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor."); *In re Hulu, LLC*, 2021 WL 3278194, at *3 (speculating that "the Fifth Circuit would recognize that where, as here, the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness" and citing the presumption of unwillingness identified in Footnote One *In re HP Inc.*).

[97] *In re TikTok*, 85 F.4th at 360 (quoting *In re Planned Parenthood*, 52 F.4th at 630–31).

[98] ECF No. 36-1 at 9.

[99] ECF No. 36-1 at 15.

[100] ECF No. 43-12 at 15.

[101] *See In re TikTok*, 85 F.4th at 360.

[102] ECF No. 46-1 at 9.

As to Apple's  component suppliers in NDCA, Resonant points out that Apple's NDCA-based third-party component suppliers "will likely work willingly with Apple because they are *Apple's suppliers* with aligned interests. They will likely *willingly* appear at Apple's request, regardless of venue."[103] Apple does not deny that point[104] and the Court agrees.

Resonant argues that ██ Cirrus Logic witnesses "knowledgeable about the operation, marketing, and/or accounting of the accused amplifiers can be compelled to testify in WDTX, but not NDCA." But neither party analyzes whether these Austin-based witnesses would incur "substantial expense" to travel the 315 miles to Midland, Texas[105]—more on that in a moment. For whatever reason, Apple argues for the first time in its reply that this factor tips in its favor because (1) one Cirrus Logic sales representative works in NDCA and is therefore under NDCA subpoena power, and (2) by way of a declaration from a Cirrus Logic project manager in Austin, Cirrus Logic ██████████████████████████████████████████████████████ ██████. The Court does not need to spend much time wondering over what 'not objecting' to compulsory process entails; Apple ultimately fails to allege or show that both the unnamed NDCA Cirrus Logic sales representative and Cirrus Logic as a whole are unwilling witnesses.[106]

Apple is also incorrect that the Cirrus Logic declaration renders Cirrus Logic's "Austin presence irrelevant to the transfer analysis."[107] In fact, just the opposite is true. Were Cirrus Logic unwilling, it would remain under compulsory power in WDTX ██████████████████████ ██████████████████████████. And although Resonant does not argue it—by Cirrus Logic's own logic—if the six-hour flight from Austin to NDCA is not inconvenient then neither is the 315-mile

---

[103] ECF No. 43-12 at 15.
[104] ECF No. 46-1 at 8–9.
[105] *See* Fed. R. Civ. P. 45(c)(1)(B)(i)-(ii)).
[106] *See In re TikTok*, 85 F.4th at 360.
[107] ECF No. 46-1 at 8.

16

flight from Austin to Midland, Texas.[108] All that said, the ███ Cirrus Logic witnesses are still Apple's suppliers likely to appear willingly at Apple's request and are construed as willing in the same manner as Apple's third-party component suppliers in NDCA.

As briefed, Apple cannot point to any unwilling witnesses, only witnesses that would be subject to NDCA's compulsory process were they unwilling.

This factor is therefore neutral.

### C. The cost of attendance for willing witnesses

Courts understand that this third factor proves the most important.[109] This factor focuses on "the cost for attendance for willing witnesses" assessed against the "100-mile thresh-old" rule.[110] Accordingly, "[w]hen the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled."[111] When applying the 100-mile rule, the Federal Circuit has held that it "should not be rigidly applied where witnesses . . . will be required to travel significant distance no matter where they testify."[112] More recently, the Fifth Circuit has noted that it is improper to ignore the rule—the implication being that it should always apply.[113]

In any event, "the inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work

---

[108] *See e.g.* ECF No. 36-1 at 16 (Apple's comparison of the travel distances and time required between the two venues).
[109] *In re Genentech, Inc.*, 566 F.3d at 1342.
[110] *Volkswagen II*, 545 F.3d at 315; *In re TikTok, Inc.*, 85 F.4th at 361.
[111] *In re TikTok*, 85 F.4th at 361.
[112] *In re Apple*, 979 F.3d at 1342 (citing *Volkswagen II*, 545 F.3d at 317) (cleaned up).
[113] *In re TikTok*, 85 F.4th at 361–62.

for an extended period of time."[114] Such an inquiry considers all potential witnesses.[115] In doing so, "a district court should assess the relevance and materiality of the information the witness may provide. Requiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary."[116]

Apple provides three witnesses by name that live in NDCA: (1) Chang Zhang, an Apple engineering ███████████████████████, (2) Catherine Spevak, who is a Finance Manager for Apple, and (3) Brian Ankenbrandt, who is a Senior Manager in Apple's IP Transactions team.[117] The Court finds these three witnesses have potentially relevant and material testimony that should be considered. Even though Resonant argues that these three Apple declarants are of dubious value, as discussed above, the declarations are reliable to the extent that they speak to the declarants' personal experience. ███████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████ I manage a team of ██ engineers, ██ of whom are responsible for the research, design, development, and implementation of Taptic Engines in the Accused MacBook Products."[118] Likewise, Spevak has sales and financial knowledge of the accused products—"I am knowledgeable about Apple's sales

---

[114] *In re Google LLC*, 2021 WL 4427899, at *4.
[115] *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).
[116] *In re Genentech*, 566 F.3d at 1343.
[117] ECF No. 36-1 at 8. Apple also attaches a declaration from a discovery manager named Robin Goldberg who would presumably testify for the sole purpose of confirming that "[s]amples of prior generations of [iPhone, MacBook, and Apple Watch products] are stored at Apple facilities in the NDCA" were that still a relevant question at trial.
[118] ECF No. 36-4 at 2.

and financial information concerning the Accused Products."[119] And Mr. Ankenbrandt has knowledge of patent licensing and transactions—"I am knowledgeable about Apple's patent licenses and patent transactions activities, including with respect to the Accused Products"[120] All three of these Apple witnesses are therefore relevant and possess the requisite material information for this stage of litigation. The Court agrees with Apple that NDCA would be a more convenient forum than WDTX for Apple's employees in Cupertino, California. The relevant consideration here is "the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time."[121]

But this consideration does not extend to Apple's unnamed employee witnesses. Apple also cites ███████████████████████ responsible for and who "have knowledge of the research, design, and implementation of the Taptic Engines in the accused products."[122] Because this group comprises unnamed individuals, the Court cannot consider them without being caused to speculate.[123] And the same is true of any other unnamed Apple sales and patent licensing team members in NDCA. Apple seems to understand this issue. In its reply, Apple cites that witnesses

---

[119] ECF No. 36-3 at 2.
[120] ECF No. 36-2 at 2.
[121] *In re Google, LLC*, 2021 WL 4427899, at * 4.
[122] ECF No. 36-1 at 8.
[123] *Freedom Pats. LLC v. DISH Network Corp.*, No. 4:23-CV-00303, 2024 WL 1147828, at *5 (E.D. Tex. Mar. 15, 2024) ("The Court cannot properly weigh the relevance and materiality of information known by witnesses who have yet to be identified.") (citing *In re Genentech, Inc.*, 566 F.3d at 1344); *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1396 (S.D. Tex. 1992) ("Where, as here, the moving party has merely made a general allegation that certain witnesses are necessary, without identifying them or the substance of their testimony, the motion must be denied"); 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, § 3851 Standard in Considering Transfer—Convenience and Location of Witnesses, 15 Fed. Prac. & Proc. Juris. § 3851 (4th ed.) ("If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, without identifying them and providing sufficient information to permit the district court to determine what and how important their testimony will be, the application for transferring the case should be denied.").

should be given no weight when a party "vaguely points to several witnesses . . . that have relevant information, but not with specificity."[124] Moreover, considering these ██████████ for their numerical value would shift the Court toward impermissible "tally[ing] the number of witnesses" available in each forum to check the score.[125]

Resonant, on the other hand, argues that Seattle-based Robin Elenga, its sole willing witness, will "find travel in Texas far less expensive than in San Fransico"[126] after assessing only the GSA per-diem rates in Midland against San Francisco[127] and taking into account his other travel plans travels to Texas for other pending litigation.[128] Importantly, Resonant does not analyze the respective travel distances or time between Seattle to Midland and Seattle to NDCA. So although Elenga offers something more than a bald assertion that travel to WDTX is less inconvenient than NDCA, the Court rejects Elenga's push to "weigh [this factor] against transfer simply because [Resonant] chose this venue"[129] based largely on his willingness to travel.

Resonant also highlights that Apple failed to investigate relevant witnesses in WDTX and blocked Resonant from identifying them during discovery. The best Resonant can do is note that of Apple's ████ potentially relevant employees in Texas, "████ hold an engineering, software, finance, marketing, or similarly relevant position at its Austin campus."[130] Apple stipulated for venue purposes that some of these employees "██████████████████████████████

---

[124] ECF No. 46-1 at 10 (citing *Uniloc USA Inc. v. Box, Inc.*, No. 1:17-CV-754-LY, 2018 WL 2729202, at *2–5 (W.D. Tex. June 6, 2018).

[125] *Webroot, Inc.*, 2024 WL 171705, at *7 (citing *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008)).

[126] ECF No. 43-12 at 15.

[127] ECF No. 44-20 at 3.

[128] ECF No. 43-12 at 15.

[129] *See AlmondNet, Inc. v. Samsung Elecs. Co.*, No. W-21-CV-00891-ADA, 2022 WL 17574082, at *5 (W.D. Tex. Nov. 28, 2022).

[130] ECF No. 43-12 at 7.

████████████████████████████████████████████████

███████████████████████████████████████ [131] How

Apple could stipulate so is unclear. In Apple's own words, "Apple does not maintain a company-

wide list of all the products that each employee works on. This is because Apple ███████████

██████████████████████."[132] To remedy Apple's organizational stumbling

block, Resonant sought the methodology Apple's declarants used to identify WDTX witnesses.[133]

Apple refused, citing that the methodology was privileged.[134] Apple also refused to search WDTX

employee emails to determine whether relevant witnesses might exist in WDTX.[135] For whatever

reason, Resonant did not seek the Court to compel Apple to produce discovery, nor did it petition

the Court to compel ESI by showing good cause, as required by standing order.

Excluded so far are the willing third-party witnesses discussed above in the section

analyzing compulsory process. Apple identified five third-party component suppliers in NDCA as

compulsory witnesses but did not deny that they would appear willingly when Resonant pointed

to their aligned interests. But though Apple names its third-party component suppliers, it does not

name their Rule 30(b)(6) representatives, or any engineers or representatives from their sales or

licensing teams. Accordingly, the Court considers only the suppliers themselves within this

factor.[136] Resonant on the other hand identified through compelled discovery ███ Cirrus Logic

potential witnesses knowledgeable about the operation, marketing, and accounting of the accused

---

[131] ECF No. 43-7 at 2.

[132] ECF No. 43-12 at 8; ECF No. 43-8 at 3.

[133] ECF No. 43-6 at 3.

[134] *Id.*

[135] *Id* at 4.

[136] *Ax Wireless LLC v. Dell Inc.*, No. 2:22-CV-0277-RWS-RSP, 2023 WL 7490047, at *4 n.5 (E.D. Tex. Nov. 12, 2023).

amplifiers that work in and reside in WDTX.[137] Although these ▇ Cirrus Logic witnesses will be required to travel more than 100 miles to testify in Midland, the trip is far less onerous than travel to NDCA.

The Court therefore finds that this factor weighs only slightly against transfer. Apple's three named witnesses and its five component suppliers would see a decrease in inconvenience if transfer was granted. But WDTX is a more convenient forum than NDCA for the ▇ Cirrus Logic employees in Austin. Moreover, there may be more relevant witnesses in WDTX due to the lack of explanation of Apple's declarants as to how they discovered there were not relevant employees in WDTX.

On balance and as briefed, the bulk of named material and relevant witnesses are here in WDTX.

### D. All other practical problems that make trial of a case easy, expeditious and inexpensive

Courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive."[138] "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer."[139] "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer."[140]

---

[137] ECF No. 43-12 at 6.
[138] *Volkswagen II*, 545 F.3d at 314.
[139] *PersonalWeb Technolgies, LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013), *order clarified sub nom. Personalweb Technolgies, LLC v. Google, Inc.*, No. 6:11-CV-656, 2013 WL 12138549 (E.D. Tex. June 28, 2013).
[140] *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 n.3 (Fed. Cir. 2010).

Apple argues that this factor is neutral, based solely on its understanding that neither WDTX nor NDCA has any experience with the asserted patents and there are no related lawsuits pending in either district.[141] Resonant argues that this factor disfavors transfer, pointing to its own motion to compel venue discovery from third-party Cirrus Logic, filed in Waco as a compliance court.[142] But it is well-stated in this Circuit that plaintiffs cannot manufacture venue by filing related suits in the transferor district.[143] Resonant's motion to compel in a compliance court therefore does not tip this otherwise neutral factor in its favor.

This factor is therefore neutral.

## III. Public Interest Factors

Next, the Court considers each public interest factor in turn: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.[144]

### A. The administrative difficulties flowing from court congestion

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums."[145] It considers the "[t]he speed with which a case can come to trial and be resolved."[146] When a "case appears to be timely proceeding to trial before the [transferor d]ivision[, t]hat fact [ ] counsels against transfer."[147]

---

[141] ECF No. 36-1 at 17.
[142] *See* FED. R. CIV. P 37(a)(2).
[143] *In re Google Inc.*, 2017 WL 977038, at *3.
[144] *Volkswagen II*, 545 F.3d at 315.
[145] *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020).
[146] *In re Genentech, Inc.*, 566 F.3d at 1347.
[147] *In re Planned Parenthood*, 52 F.4th at 631.

Court congestion is "the most speculative" factor.[148] And when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors."[149]  The Federal Circuit has held that this factor should not weigh against transfer when the plaintiff "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution."[150] But recent Fifth Circuit cases indicate that this factor disfavors transfer when the "case appears to be timely proceeding to trial before the transferee district."[151]

Apple argues that this factor is neutral or only slightly favors transfer. As to neutrality, Apple argues that the Federal Circuit has "noted that the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics."[152] As to favoring transfer, Apple cites one WDTX case from 2018 that acknowledged that NDCA had a shorter time to trial for patent cases than WDTX.[153] Resonant argues that this factor weighs against transfer because the current statistics show that the average time to trial for patent cases is five months faster in WDTX than NDCA.[154]

These statistics are not particularly relevant.[155] The Fifth Circuit has twice rejected time-to-trial statistics in the last six months,[156] recognizing that *Planned Parenthood* foreclosed their

---

[148] *In re Genentech, Inc.*, 566 F.3d at 1347.

[149] *Id.*

[150] *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023).

[151] *In re TikTok, Inc.*, 85 F.4th at 363 (cleaned up).

[152] *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804 at *4 (Fed. Cir. Nov. 15, 2021) (quoting *In re Juniper Networks, Inc.*, 14 F.4th at 1322) (cleaned up).

[153] *Uniloc USA Inc. v. Box, Inc.*, No. 1:17-CV-754-LY, 2018 WL 2729202, at *4 (W.D. Tex. June 6, 2018) ("Patent cases . . . move more quickly than other civil cases, and the average time to trial in Northern California is marginally faster than in Western Texas.").

[154] ECT No. 43-12 at 16

[155] *In re Clarke*, 94 F.4th at 510.

[156] *See id.*; *In re TikTok*, 85 F.4th at 363 n.12.

use because "the district court is better placed to evaluate its docket efficiency."[157] Review of this case's docket reveals that it is on track for a timely trial, which "normally weighs against transfer."[158]

But Apple also argues that this factor cannot disfavor transfer because Resonant is not a practicing entity.[159] Resonant disagrees because it considers Apple its only direct competitor.[160] Later, Resonant clarifies for the first time in its sur-reply that licensing with Apple could have allowed it to weather the pandemic and "keep its manufacturing operation running."[161] Resonant therefore lacks a position in the market under threat to accord this factor any weight.[162]

The Court therefore finds this factor neutral.

## B.    The local interest in having localized interests decided at home

This factor requires the Court to evaluate whether there is a local interest in deciding local interest at home.[163] Courts do not consider the parties' connection to the venue when analyzing this factor because "local interest analysis is a public interest factor."[164] Instead, courts look at "the interest of *non-party citizens* in adjudicating the case."[165] "Considerations such as 'the location of the injury, witnesses, and the [p]laintiff's residence,'[166] are useful proxies for determining what local interests exist in each venue. But proxies, no matter how useful in certain cases, can never

---

[157] *Id.* (cleaned up).

[158] *In re TikTok*, 85 F.4th at 363 ; *see also In re Clarke*, 94 F.4th 502, 509 (5th Cir. 2024).

[159] ECF No. 36-1 at 17; *See In re Google LLC*, 58 F.4th at 1383 (holding it is "a clear abuse of discretion to accord this factor any weight" where the plaintiff "is not engaged in product competition in the marketplace").

[160] ECF No. 43-12 at 17.

[161] ECF No. 67 at 11.

[162] *See In re Google LLC*, 58 F.4th at 1383.

[163] *Volkswagen II*, 545 F.3d at 317.

[164] *In re Clarke*, 94 F.4th at 511.

[165] *Id.* (citations omitted) (emphasis in original).

[166] *Def. Distributed*, 30 F.4th at 435.

subsume the ultimate inquiry."[167] That is, a court must also consider the events that gave rise to the suit.[168]

Here, Apple largely points to proxies: Apple's headquarters (and most of its workforce) and relevant teams, witnesses, and evidence all exist in NDCA.[169] Apple does, however, assert that those teams design and develop the accused products in NDCA,[170] leading the Court to understand that Apple believes all events critical to this case occurred in NDCA. In support, however, Apple directs the Court back to its faulty declaration from Zhang, discussed above. It is therefore unclear whether the critical events that gave rise to the suit occurred solely in NDCA or in WDTX as well, and in what proportion.

Resonant argues that this factor strongly disfavors transfer. Resonant first points to a proxy: ███████'s strong financial interest in the outcome of the case.[171] But it also points to ███ ███'s actions designing and developing ████████████████████.[172] Resonant also argues that WDTX may have a stronger local interest but that the interest cannot be accurately determined because Apple yet again failed to properly investigate for relativity.

The Court finds that this factor is neutral. The parties each allege that development and design of the accused products has occurred in the district they favor. What is unclear is whether more development and design occurred in NDCA than WDTX. Resonant has more clearly indicated that it believes *some* infringement has occurred in Austin by Apple's third-party component supplier, Cirrus Logic. Apple on the other hand, briefs but does not support its

---

[167] *In re Clarke*, 94 F.4th at 511.
[168] *Id.*
[169] ECF No. 36-1 at 18.
[170] ECF No. 36-1 at 18.
[171] ECF No. 43-12 at 17.
[172] *Id.*

argument that *all* critical events that gave rise to this suit were in NDCA and fails to address in what proportion if they did not.

### C.    The familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws or in the application of foreign laws

Both parties agree that these latter two factors are neutral; both forums are familiar with the law that will govern this matter and there are no potential conflicts of law.[173] The Court agrees.

## IV.    Good cause

As the Fifth Circuit recently reminds, "The propriety of § 1404(a) transfer turns on [the movant] meeting its burden of 'adduc[ing] evidence and arguments that clearly establish good cause for transfer based on convenience and justice.'"[174]

Apple has failed to meet is burden to "clearly establish good cause."[175] Of the eight factors, none favor transfer as briefed. In light of these issues, the Court must not exercise discretion to grant Apple's transfer request.

### CONCLUSION

Having considered the private and public interest factors, the Court finds that none warrant transfer. A decision to uproot litigation and transfer must be based on a moving party's showing that that the transferee forum is a clearly more convenient forum. Of the eight factors, none favor transfer. The willing witness factor slightly disfavors transfer while the sources of proof factor is neutral if not slightly disfavoring transfer. The remaining factors are neutral. The Court therefore finds that Apple has not met its burden of showing that NDCA is a clearly more convenient forum.

---

[173] ECF No. 16-1 at 19; ECF No. 43-12 at 17.
[174]*In re Clarke*, 94 F.4th at 515 (citing *Def. Distributed*, 30 F.4th at 433; *and In re Planned Parenthood*, 52 F.4th at 629 ("The *ultimate inquiry* is whether the destination venue is clearly more convenient than the venue chosen by the plaintiff.") (cleaned up).
[175] *Def. Distributed*, 30 F.4th at 433.

**IT IS THEREFORE ORDERED** that Apple's motion to transfer venue to the Northern District of California is **DENIED**.[176]

It is also **ORDERED** that Apple's motion to stay the case pending entry of this order is also **DENIED AS MOOT**.[177]

It is also **ORDERED** that Resonant's pending motion to strike[178] is also **DENIED AS MOOT**; Resonant's sur-reply[179] addresses the same issues favoring striking Apple's late-coming declaration.

It is also **ORDERED** that Resonant's argument in the alternative to transfer this case to Austin should the Court find transfer is warranted is **DENIED**.[180]

It is so **ORDERED**.

**SIGNED** this 18th day of April, 2024.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

---

[176] ECF No. 36.
[177] ECF No. 58.
[178] ECF No. 52.
[179] ECF No. 67.
[180] ECF No. 36.