# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND-ODESSA DIVISION

RESONANT SYSTEMS, INC. d/b/a
RevelHMI,

        *Plaintiff*,

v.

APPLE INC.,

        *Defendant*.

Case No. 7:23-cv-00077-ADA

JURY TRIAL DEMANDED

███████████████

PUBLIC VERSION

# APPLE INC.'S OMNIBUS MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................ 1

II.   LEGAL STANDARDS FOR SUMMARY JUDGMENT MOTIONS ............................. 1

III.  MSJ ONE:  NON-INFRINGEMENT Of The '337, '767, and '830 Patents ...................... 3

    A.    Resonant Bears the Burden of Adducing Admissible Expert Testimony as to Each Limitation and Each Accused Product ........................................ 5

    B.    Resonant Cannot Satisfy Its Burden of Proof as to Any Asserted Claim of the '337 Patent as Resonant Has No Expert Testimony to Support Its Claims ....................................................................................... 6

    C.    Resonant Cannot Meet Its Burden of Proof on Any Asserted Patent as to Any Accused Product Other than iPhone 7, Which Is the Only Product Specifically Analyzed by Dr. Goossen .................................................. 7

    D.    The Accused Products ██████████████████████████ ████████████████████████ ████████████████████ ........................ 10

    E.    Apple Does Not Infringe the Asserted Claims of the '830 Patent Because the Accused Products Do Not Contain the Claimed "Control Component…" ............................................................................. 11

    F.    Apple Does Not Infringe the Asserted Claims of the '767 and the '830 Patents Because the Accused Products Do Not Contain the Claimed "Driving Component" ........................................................................ 15

IV.   MSJ TWO:  THERE ARE NO GENUINE ISSUES OF MATERIAL FACT REGARDING WILLFUL INFRINGEMENT .................................................. 19

    A.    Willfulness Requires Evidence of Deliberate and Intentional Infringement ........ 19

    B.    Resonant Cannot Prove (And Has No Evidence to Show) That Apple Deliberately or Intentionally Infringes ............................................... 20

V.    MSJ THREE:  RESONANT CANNOT PROVE IT IS ENTITLED TO ITS CLAIMED PRIORITY DATES ...................................................................... 25

    A.    Legal Standard:  Claiming Priority to Provisional Applications ....................... 25

    B.    Resonant Has Not Met, And Cannot Meet, Its Burden of Proving the '767 and '830 Patents' Priority Claims .......................................................... 26

        1.    Resonant Has Done Nothing to Substantiate Its Claim of Priority ........... 27

        2.    The '109 Provisional Lacks Written Description Support for the Asserted Claims ................................................................... 27

            a.    There Is No Written Support for the "Control Component" Limitation of Claim 1 of the '767 Patent ....................................... 28

            b.    There Is No Written Support for the "Control Component" Limitations of Claims 1, 3, and 4 of the '830 Patent ................... 30

C.     Resonant Has Not Met, And Cannot Meet, Its Burden of Proving the '882 Patent's Priority Claim.......................................................................... 32

VI.   MSJ FOUR:  APPLE IS ENTITLED TO SUMMARY JUDGMENT OF NO PRE-SUIT DAMAGES FOR THE '767 PATENT .......................................... 34

    A.     Relevant Legal Standards: Marking........................................................ 34

    B.     Resonant Cannot Recover Pre-Suit Damages on the '767 Patent........................ 35

        1.     Apple Timely Identified an Unmarked Patented Article ......................... 35

        2.     Resonant Cannot Prove Compliance with the Marking Statute............... 36

VII.  CONCLUSION.................................................................................... 38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acceleron, LLC v. Dell Inc.*,
    2022 WL 1087683 (N.D. Ga. Mar. 7, 2022) ........................................................................21

*AlmondNet, Inc. v. Amazon.com, Inc.*,
    No. 6:21-cv-00898-ADA, D.I. 244 (W.D. Tex. Apr. 18, 2024) ...........................................22

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
    6 F.3d 1523 (Fed. Cir. 1993) ...............................................................................................34

*Amgen Inc. v. Sanofi*,
    872 F.3d 1367 (Fed. Cir. 2017) ...........................................................................................26

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...............................................................................................................1

*Apple Inc. v. Resonant Sys., Inc.*,
    Nos. IPR2024-00697, -00698, -00806, -00807, and -00983 ................................................22

*AquaTex Indus., Inc. v. Techniche Sols.*,
    479 F.3d 1320 (Fed. Cir. 2007) ...............................................................................4, 5, 6, 16

*Arctic Cat Inc. v. Bombardier Rec. Prods.*,
    876 F.3d 1350 (Fed. Cir. 2017) ................................................................................34, 35, 36

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) (en banc) ...........................................................................26

*Arigna Tech. Ltd. v. Apple Inc.*,
    No. W-21-CV-00943-ADA, D.I. 279 (W.D. Tex. Aug. 19, 2023) ........................................22

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Research Org.*,
    28 F.4th 1247 (Fed. Cir. 2022) ............................................................................................19

*Bayer Healthcare LLC v. Baxalta Inc.*,
    989 F.3d 964 (Fed. Cir. 2021) .............................................................................................19

*BillJCo, LLC v. Apple Inc.*,
    583 F. Supp. 3d 769 (W.D. Tex. 2022) ...............................................................................24

*Boston Scientific Corp. v. Nevro Corp.*,
    560 F. Supp. 3d 837 (D. Del. 2021) ...............................................................................20, 25

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...........................................................................................1, 7

*Centricut, LLC v. Esab Grp., Inc.*,
  390 F.3d 1361 (Fed. Cir. 2004)....................................................................4, 5, 7, 16

*Contour IP Holding, LLC v. GoPro, Inc.*,
  2020 WL 5106845 (N.D. Cal. Aug. 31, 2020) ...............................................37, 38

*Cybiotronics, Ltd. v. Golden Source Elecs. Ltd.*,
  130 F. Supp. 2d 1152 (C.D. Cal. 2001) .................................................................35

*D Three Enters., LLC v. SunModo Corp.*,
  890 F.3d 1042 (Fed. Cir. 2018)..............................................................................28

*Droplets, Inc. v. E\*Trade Bank*,
  887 F.3d 1309 (Fed. Cir. 2018)..............................................................................25

*Duffy v. Leading Edge Prods., Inc.*,
  44 F.3d 308 (5th Cir. 1995) .....................................................................................2

*Dunlap v. Schofield*,
  152 U.S. 244 (1894)...............................................................................................34

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)..............................................................................14

*Forsyth v. Barr*,
  19 F.3d 1527 (5th Cir. 1994) ...................................................................................2

*Freedman Seating Co. v. Am. Seating Co.*,
  420 F.3d 1350 (Fed. Cir. 2005)................................................................................7

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  582 F.3d 1288 (Fed. Cir. 2009)..............................................................................18

*Global eTicket Exchange Ltd. v. Ticketmaster LLC*,
  No. 6:21-cv-00399-ADA, D.I. 161 (W.D. Tex. Mar. 15, 2023)............................22

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
  897 F.2d 508–11 ....................................................................................................24

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  579 U.S. 93 (2016).........................................................................................20, 25

*Intellectual Ventures I LLC v. Symantec Corp.*,
  234 F. Supp. 3d 601 (D. Del. 2017).......................................................................21

*Kaist IP US LLC v. Samsung Elecs. Co.*,
  2018 WL 10498197 (E.D. Tex. May 22, 2018)............................................................35

*Kearns v. Chrysler Corp.*,
  32 F.3d 1541 (Fed. Cir. 1994)...............................................................12, 16, 17

*Kemco Sales, Inc. v. Control Papers Co., Inc.*,
  208 F.3d 1352 (Fed. Cir. 2000)............................................................................14

*Laitram Corp. v. Rexnord, Inc.*,
  939 F.2d 1533 (Fed. Cir. 1991)..............................................................................5

*Mass. Inst. of Tech. v. Abacus Software, Inc.*,
  2004 WL 5268123 (E.D. Tex. Aug. 4, 2004) .........................................................36

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................................................2

*Meridian Mfg., Inc. v. C&B Mfg., Inc.*,
  340 F. Supp. 3d 808 (N.D. Iowa 2018).................................................................37

*Metrologic Instruments, Inc. v. PSC, Inc.*,
  2004 WL 2851955 (D.N.J. Dec. 13, 2004) ............................................................37

*Motorola, Inc. v. United States*,
  729 F.2d 765 (Fed. Cir. 1984)...............................................................................35

*NexStep, Inc. v. Comcast Cable Comm's, LLC*,
  2021 WL 4077778 (D. Del. Aug. 20, 2021), *report and recommendation
  adopted in pertinent part,* 2021 WL 4207442 (D. Del. Sep. 16, 2021).....................21, 23, 24

*Novartis Corp. v. Ben Venue Labs., Inc.*,
  271 F.3d 1043 (Fed. Cir. 2001)................................................................................7

*Odetics, Inc. v. Storage Tech. Corp.*,
  185 F.3d 1259 (Fed. Cir. 1999)..............................................................................17

*Pact XPP Schweiz AG v. Intel Corp.*,
  2023 WL 2631503 (D. Del. Mar. 24, 2023) ..........................................................25

*Pasafeshare LLC v. Microsoft Corp.*,
  No. 6:20-cv-00397-ADA, D.I. 244 (W.D. Tex. Mar. 17, 2025)..............................22

*Pharmacyclics LLC v. Alvogen Pine Brook LLC*,
  556 F. Supp. 3d 377 (D. Del. Aug. 19, 2021)..................................................27, 32

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008)..............................................................................26

*Ravgen, Inc. v. Quest Diagnostics Inc.*,
   2022 WL 2047613 (C.D. Cal. Jan. 18, 2022) .......................................................................23

*Ruiz v. A.B. Chance Co.*,
   357 F.3d 1270 (Fed. Cir. 2004)...............................................................................................5

*Samsung Electronics Co., Ltd. v. Resonant Sys., Inc.*,
   IPR2023-00993 .......................................................................................................................22

*Schumer v. Lab. Computer Sys., Inc.*,
   308 F.3d 1304 (Fed. Cir. 2002)...........................................................................................4, 5

*Shopify Inc. v. Express Mobile, Inc.*,
   2021 WL 4288113 (D. Del. Sept. 21, 2021) .........................................................................24

*Slot Speaker Technologies, Inc. v. Apple, Inc.*,
   2017 WL 4354999 (N.D. Cal. Sept. 29, 2017) .....................................................................23

*Sonos, Inc. v. Google LLC*,
   591 F. Supp. 3d 638 (N.D. Cal. 2022), *leave to appeal denied*, No. 2022-134,
   2022 WL 1486359 (Fed. Cir. May 11, 2022) .......................................................................25

*Spansion, Inc. v. Int'l Trade Comm'n*,
   629 F.3d 1331 (Fed. Cir. 2010)................................................................................................8

*SPEX Techs., Inc. v. W. Digital Corp.*,
   859 F. App'x 557 (Fed. Cir. 2021) .......................................................................................14

*Sprint Commc'ns Co. v. Atlantic Broadband Finance LLC*,
   2021 WL 982735 (D. Del. Mar. 16, 2021) ...........................................................................25

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   14 F.4th 1323 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 2732 (2022)..............................19, 24

*Stoller Enterprises, Inc. v. Fine Agrochemicals Ltd.*,
   705 F. Supp. 3d 774 (S.D. Tex. 2023) ..................................................................................23

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
   550 F.3d 1356 (Fed. Cir. 2008)...............................................................................................5

*Tech. Licensing Corp. v. Videotek, Inc.*,
   545 F.3d 1316 (Fed. Cir. 2008).........................................................................................26, 32

*Tokai Corp. v. Easton Enters., Inc.*,
   632 F.3d 1358 (Fed. Cir. 2011)...............................................................................................5

*Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*,
   15 F.4th 1121 (Fed. Cir. 2021) .........................................................................12, 14, 15, 16

*Under Sea Indus., Inc. v. Dacor Corp.*,
  833 F.2d 1551 (Fed. Cir. 1987)...........................................................................5

*Uniloc USA Inc. v. Sega of American, Inc.*,
  711 F. App'x 986 (Fed. Cir. 2017) ....................................................................31

*Union Carbide Corp. v. Am. Can Co.*,
  724 F.2d 1567 (Fed. Cir. 1984).............................................................................4

*Universal Elecs. Inc. v. Roku, Inc.*,
  2019 WL 1877616 (C.D. Cal. Mar. 5, 2019) .......................................................21

*Vaporstream, Inc. v. Snap Inc.*,
   2020 WL 136591 (C.D. Cal. Jan. 13, 2020) .......................................................21

*VLSI Tech. LLC v. Intel Corp.*,
  2021 WL 2773013 (W.D. Tex. Apr. 12, 2021)..............................................34, 35

*WSOU Investments LLC v. Google LLC*,
  No. 6:20-cv-00585-ADA, D.I. 273 (W.D. Tex. Dec. 6, 2023) .............................22

## Statutes

35 U.S.C. § 112......................................................................................... *passim*

35 U.S.C. § 287.............................................................................34, 35, 36

## Other Authorities

Fed. R. Civ. P. 26.............................................................................................17

Fed. R. Civ. P. 37.............................................................................................17

Fed. R. Civ. P. 50.......................................................................................21, 22

Fed. R. Civ. P. 56.........................................................................................1, 2

FRE 702 ............................................................................................................16

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56, Apple respectfully moves this Court to enter summary judgment in its favor and against Resonant on the following claims and defenses:

(1)    Apple's products do not infringe the asserted claims of the '767, '337, and '830 patents;

(2)    Apple has not willfully infringed any asserted patent;

(3)    Resonant is not entitled to an earlier priority date for all asserted claims of all asserted patents; and

(4)    Resonant's is not entitled to any pre-suit damages for alleged infringement of the asserted claims of the '767 patent.

As set forth below, there are no genuinely disputed issues of material fact as to each of these claims and, on the record that will be tried before the jury, no reasonable jury could find in Resonant's favor.

## II.    LEGAL STANDARDS FOR SUMMARY JUDGMENT MOTIONS

All of Apple's motions for summary judgment are covered by the well-known standards embodied in Federal Rule of Civil Procedure 56. As set forth in that rule, this Court "shall grant summary judgment if the movant"—in this case Apple—"shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Rule 56 sets forth a two-step burden-shifting procedure to assist the Court in ascertaining whether there are any genuinely disputed facts underlying a claim or defense. First, the moving party bears an initial responsibility of informing the district court the basis for its motion and for presenting sufficient evidence that no genuine disputes of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that is likely to reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not

genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party clears that initial hurdle, the burden of production shifts to the party opposing summary judgment. *Id.* at 586. To meet this burden, the opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Rather, the opposing party must "come forward with ***specific*** facts showing that there is a ***genuine issue for trial***." *Id.* at 587 (internal quotation marks omitted) (emphasis added). "[C]onclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Moreover, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment should be granted. *See* Fed. R. Civ. P. 56; *Matsushita*, 475 U.S. at 587.

## APPLE'S MOTIONS FOR SUMMARY JUDGMENT

### III.    MSJ ONE:  NON-INFRINGEMENT OF THE '337, '767, AND '830 PATENTS

Apple moves this Court to enter summary judgment that Apple does not infringe Resonant's asserted claims.  Apple moves for summary judgment that:

1.    Resonant cannot prove infringement of the '337 patent because it has offered ***no expert opinion*** regarding infringement of that patent by any accused product;

2.    Resonant cannot prove infringement of any of the asserted patents for any accused product other than the iPhone 7, which is the ***only accused product*** for which Resonant's expert offers anything close to a complete analysis;

3.    Resonant cannot prove infringement of the '767 patent for the accused products █ ██████████████████████████████████████████████;

4.    Resonant cannot show that the accused products infringe the '830 patent because there is no evidence that they meet the "control program" limitations;

5.    Resonant cannot show that the accused products infringe the '767 and '830 patents because there is no evidence that they meet the "driving component" limitation;

The scale of Resonant's infringement allegations is significant.  Resonant asserts that ***twenty-nine*** different models of the iPhone, ██████████████████████████ ███████████, infringe ***twelve*** different asserted claims, spanning three asserted patents.  *See, e.g.,* Ex. 1 (Goossen Inf. Report).[1]  For this alleged infringement, Resonant asks this Court to award it more than ██████████.  *See* Ex. 2 (Dell Report) ¶ 279.

---

[1] Despite Resonant's complaint and infringement contentions alleging that Apple infringed 29 claims across four patents, Resonant's technical expert Dr. Goossen only addresses a subset of the claims and does not discuss the '337 patent at all.

Resonant has not, though, done what it needed to do to support these allegations. The burden of proving infringement always rests with the patentee. And, in a case involving complex technology and means-plus-function limitations, the patentees rely on obtaining and providing competent expert testimony to support its claims. Here, though, Resonant offered **no** expert testimony regarding Apple's alleged infringement of the '337 patent. (Yet, to date, Resonant has not dropped the '337 patent from this case). While the Federal Circuit has declined to adopt a per se rule requiring the use of expert testimony to prove infringement in all patent cases, the cases where expert testimony is not required is generally limited to cases where the technology at issue is "easily understandable without the need for expert explanatory testimony." *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984). However, where the field or technology is complex, expert testimony is "typically" required for a plaintiff to prove his or her case. *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). Indeed, "in a case involving complex technology, where the accused infringer offers expert testimony negating infringement, the patentee cannot satisfy its burden of proof by relying only on testimony from those who are admittedly not expert in the field." *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004); *see also AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1329 (Fed. Cir. 2007) (affirming summary judgment of non-infringement because plaintiff, with burden of proving infringement, "provided no particularized testimony from an expert or person skilled in the art" to support its infringement theory). And as to Resonant's other claims, Resonant offered only half-hearted conclusory expert testimony that specifically analyzes only **one** accused product (the iPhone 7) and disregards this Court's constructions as to certain means-plus-function limitations of the '830 and '767 patents. Big claims require big proof and—put simply—Resonant's proof falls far shorter than its claims.

4

Because Resonant has not and cannot meet its burden of proof, Apple respectfully requests that this Court enter summary judgment in its favor and against Resonant, as set forth in greater detail below.

### A.    Resonant Bears the Burden of Adducing Admissible Expert Testimony as to Each Limitation and Each Accused Product

Resonant, as the patentee, bears the burden of proving infringement.  *Under Sea Indus., Inc. v. Dacor Corp.*, 833 F.2d 1551, 1557 (Fed. Cir. 1987) ("The burden always is on the patentee to show infringement.").  In attempting to prove infringement, Resonant must demonstrate that "every limitation set forth in a patent claim must be found in an accused product or process exactly or by a substantial equivalent." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).  "[T]he failure to meet a single limitation is sufficient to negate infringement of the claim." *Id.*

Part of Resonant's burden in this case is to adduce competent expert testimony to support its infringement claims.  *AquaTex*, 479 F.3d at 1329.  This case certainly falls in the category of cases where expert testimony is required.  *See Schumer*, 308 F.3d at 1315.  Here, the technology is complex and far beyond the normal understanding of lay persons.  The claimed technology relates to the design and programming of integrated circuits—far unlike the types of simple mechanical engineering cases where expert testimony was found not to be required.  *See, e.g., Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1371 (Fed. Cir. 2011) (manual lighters); *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1365 (Fed. Cir. 2008) (single patent claim involving retractable tarp); *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1276 (Fed. Cir. 2004) (screw anchors and metal brackets).  The subject matter here is far more like those cases where— in the absence of expert testimony—summary judgment was granted and affirmed. *E.g., Centricut,*

390 F.3d at 1370 (affirming grant of summary judgment of non-infringement in the absence of expert testimony in a case involving electrode components).

Putting this case further outside of the un-assisted knowledge of a lay person is the complexity of the claims. The claims here recite numerous means-plus-function elements; and Resonant's allegations often depend on assertions that the technology in the accused products is equivalent to the corresponding structures in the specification. In the context of the doctrine of equivalents—which involves a similar kind of analysis—the Federal Circuit has explained that "the difficulties and complexities of the doctrine require that evidence be presented to the jury or other fact-finder through the particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that those skilled in the art would recognize the equivalents." *AquaTex*, 479 F.3d at 1329 (patentee could not withstand summary judgment on the issue of infringement under the doctrine of equivalents in the absence of expert testimony).

In short, to properly support its claims and meet its burden, Resonant must show that each and every element of every asserted claim is present in every accused device; and it must do so through competent expert testimony. As discussed below, Resonant has not done so as to many of its claims and most of the accused products.

**B.      Resonant Cannot Satisfy Its Burden of Proof as to Any Asserted Claim of the '337 Patent as Resonant Has No Expert Testimony to Support Its Claims**

First, Apple is entitled to summary judgment on Resonant's claim that Apple infringes claims 2 and 3 of U.S. Patent No. 8,860,337 (the "'337 patent"). Despite being one of four patents that Resonant has asserted against Apple throughout the litigation, and despite the Court's complex means-plus-function construction of the "control component" limitation in each asserted claim, Resonant's expert did not provide any testimony regarding alleged infringement of the '337 patent.

Ex. 3 ('337 patent).  *See, e.g.,* Ex. 4 (Goossen Dep. Tr.) at 39:23-40:1 ("Q. You've not offered any opinions that Apple's accused products infringe any claims of the '337 Patent; correct?  A. Correct.").  As such, Resonant is left without any evidence or expert opinion on the '337 patent, and Apple is entitled to summary judgment of noninfringement.[2]  *Celotex*, 477 U.S. at 325 (summary judgment must be granted when "there is an absence of evidence to support the nonmoving party's case."); *Centricut*, 390 F.3d at 1370 (affirming grant of summary judgment of non-infringement in the absence of expert testimony); *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1054 (Fed. Cir. 2001) (affirming district court's grant of summary judgment, finding there were "no facts in the record" to support plaintiff's infringement theory).

### C.  Resonant Cannot Meet Its Burden of Proof on Any Asserted Patent as to Any Accused Product Other than iPhone 7, Which Is the Only Product Specifically Analyzed by Dr. Goossen

Apple is entitled to summary judgment of non-infringement on all asserted patents as to all products other than the iPhone 7, as Resonant's expert failed to provide a complete analysis as to any other accused product.  To meet its burden of proving all twenty-nine accused products infringe, Resonant bears the burden of showing that ***each*** accused product meets each and every limitation of every asserted claim.  *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005).

Resonant could have attempted to meet this burden in one of two different ways.  First, following a traditional analysis, Resonant could have separately analyzed each accused product, showing that each separately meets each and every limitation of every asserted claim.  Resonant

---

[2] Apple is also entitled to summary judgment of noninfringement because the Court's construction of the "control component" limitation in the '337 patent is nearly identical to the court's construction of the "control component" limitation in the '830 patent. And, as explained below in Section I.E, the accused products do not include the claimed "control component."

has not attempted to do this.  Indeed, for at least one limitation of every asserted independent claim, Dr. Goossen's analysis touches only on one accused product—the iPhone 7.[3]

Second, Resonant could have attempted to prove that all accused products infringe by analyzing one or more representative products and then showing that the other accused products conform to the representative products.  *See, e.g., Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1350 (Fed. Cir. 2010).  At best, Dr. Goossen's report pays lip-service to this approach, using the word "representative" only once (in ¶ 54).  There, in a single sentence, he opines that "Appendix A" supports his "opinion that the description of the physical components of certain exemplary Accused Products is representative of all the Accused Products."  Ex. 1 (Goossen Inf. Report) ¶ 54.  But nowhere does Dr. Goossen ever identify *which* accused product is supposedly representative, nor what other accused products it supposedly represents.  More importantly, nowhere in his report does Dr. Goossen explain *why or how* any particular accused product is representative.  And Appendix A (which he purports is evidence of representativeness) simply consists of nothing more than a spreadsheet listing product code names and Bates numbers of bills of materials for them—without further commentary or analysis.  *See* Ex. 5 (Exhibit A to Goossen Inf. Report).

---

[3] '767 patent, claim 1: *E.g.*, Ex. 1 (Goossen Inf. Report), ¶¶ 185-186 (Dr. Goossen's analysis concerning element 1b, which only specifically analyzes only the iPhone 7 ███████████; ¶ 187 (Dr. Goossen's analysis concerning element 1c, which (once all of the internal cross references are followed) also only analyzes the iPhone 7 (¶¶ 273-274)); ¶ 195 (Dr. Goossen's analysis of element 1e, which elides any discussion of any specific accused products).
'830 patent, claim 1: *E.g.,* Ex. 1 (Goossen Inf. Report), ¶ 218 (Dr. Goossen's analysis of element 1a, which refers only to his analysis of the '767 patent); ¶ 220 (Dr. Goossen's analysis of element 1b); ¶ 225 (Dr. Goossen's analysis of element 1e).
'882 patent, claim 1: *E.g.*, Ex. 1 (Goossen Inf. Report), ¶¶ 271-280 (Dr. Goossen's analysis of the "mass" limitation, which discusses only the iPhone 7).

Here, there are meaningful differences between the accused products that are relevant to infringement. Indeed, Dr. Goossen himself acknowledges some of these differences. For example, the Taptic Engine used in the iPhone 7 and 7 plus included ██████████ ██████████ (*see* Ex. 1 (Goossen Inf. Report) ¶ 120); whereas later versions of the iPhone ██████████████████████████████████████████████████ (*see id.* ¶ 125). Different versions of the Taptic Engine—as Dr. Goossen acknowledges—██████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████. *See id.* ¶¶ 56-57.

Though Dr. Goossen simply brushes aside these differences among accused products, they matter to the infringement analysis. Indeed, in some cases, these differences are dispositive. For example, as discussed below with respect to the '767 patent (*see* Section III.D, *infra*), ██████████ ████████████████████████████████████████████████ ████████████████████████████. Similarly, as discussed below with respect to the "driver component" element of the '767 and '830 patents, ████████████████████████████ ██████████████████████. Yet, because of how Dr. Goossen approached his infringement analysis, these important differences are ignored. They should not have been.

In short, Resonant simply hasn't done what it needed to do to prove infringement of twenty-nine different accused products. Resonant could have asked its expert to provide claim charts for each of the accused products; or perhaps to lay out the analysis separately for each of the accused products. Resonant and its expert could have grouped the products into various "representative groups," ***explained*** why the products were grouped in that way, and then performed an analysis as to each separate group. Resonant and Dr. Goossen did none of this. They instead offered expert

testimony that glosses over significant differences between the accused products and only actually analyzes a single product—the iPhone 7. Because of these gaps in expert testimony, summary judgment of non-infringement as all accused products (except iPhone 7) is warranted.

      **D.**    **The Accused Products** ███████████████████████

███████████████████████████████████

███████████████████

Claim 1 of the '767 patent requires ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████ ████████████████████

█████ *See, e.g.,* Ex. 7 (Zinn Reb. Report) ¶ 47. Specifically, as explained in the report of Apple's expert, Dr. Zinn, and in the deposition testimony of Apple's engineers, ████████████████

████████████████████████████████████

█████████████ *Id.* (emphasis added); *see also* Ex. 8 (Zhang Dep. Tr.) at 152:19-153:2. This was because ██████████████████████████████. *See id.* There is no evidence in the record to the contrary.

Resonant's expert, Dr. Goossen, offers no testimony as to how ████████████████

████████████████████████████████████

███████████. Indeed, Dr. Goossen does not even acknowledge this fact. Instead, he nakedly asserts that all accused products satisfy the limitation. *See* Ex. 1 (Goossen Inf. Report) ¶ 211. That Dr. Goossen appears to have ignored this important difference between various models of the accused products is illustrative as to the problems underlying his entire approach to analyzing alleged infringement. And Dr. Goossen's failure to acknowledge this important difference means

---

[4] As acknowledged by Resonant at claim construction, ██████████████████████████

████████████████████████████████████ *See* D.I. 79 at 28.

that Apple is entitled to summary judgment ████████████████████████████████████

████████████████ cannot infringe the asserted claims of the '767 patent:

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████.

### E. Apple Does Not Infringe the Asserted Claims of the '830 Patent Because the Accused Products Do Not Contain the Claimed "Control Component…"

Summary judgment is also warranted because Resonant has not and cannot adduce admissible evidence that the accused products contain the "control component" required by claim 1 of the '830 patent.

The Court found the "control component" limitation in claim 1 of the '830 patent was subject to Section 112(f), and has construed it to have the following function and corresponding structure:

> Function: controlling supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by specified by one or more stored values;

> Structure: …Steps 706 through 716 in Figure 7A, with reference to all steps shown in Figure 7B other than Step 734 and all steps shown in Figure 7C, or the algorithm described in the corresponding text, *See, e.g.*, 7:20–7:34, 7:42–7:52, 7:60–8:40, and equivalents thereof.

D.I. 91 at 6-7. The steps in Figure 7A describe the control program executed by the CPU to operate the vibration module. Ex. 9 ('830 Patent) at 6:56–60. And Figure 7B breaks down the "monitor" step 712 of Figure A into thirteen additional discrete steps. *Id.* at 7:42–8:19. Similarly, Figure 7C further delineates the "control" step 716 in Figure 7A into three additional discrete steps. *Id.* at

8:20–33.  In all, Figures 7A, 7B, and 7C describe *21 steps* that, according to the Court's construction, *must* be performed as part of the corresponding structure.

Resonant bears the burden of showing that the accused products "(1) perform the identical function recited in the means limitation and (2) perform[s] that function using the structure disclosed in the specification or an equivalent structure."  *Kearns*, 32 F.3d at 1548 n.8.  When the corresponding structure includes an algorithm, as here, Resonant's burden includes showing that the *same steps* (or their equivalents) of an algorithm in the corresponding structure are performed in the accused products.  *See Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1128–29 (Fed. Cir. 2021) (affirming summary judgment where patentee's expert failed to discuss at least nine steps of an algorithm performed by the structure in a means-plus-function element).

As explained in Apple's concurrently filed motion to exclude Dr. Goossen's testimony, the above-described failures should lead to exclusion of his testimony, and thus summary judgment.  Regardless as to whether the Court excludes the testimony, though, Dr. Goossen's testimony is insufficient to create a genuine dispute of fact, because he failed to provide any analysis or cite to any evidence that a processor inside the accused products performs 19 of the 21 required steps of the algorithm.

*As to the steps shown in Figure 7A*, Dr. Goossen provides only a cursory analysis of how the Accused Products purportedly perform steps 706 and 708 of Figure 7A.  To be sure, Dr. Goossen's analysis of these two steps is deficient—as Apple will show at trial.  However, regardless as to whether Dr. Goossen's discussion as to the steps he does analyze is correct, Dr. Goossen provides *no analysis* as to whether Apple's algorithm performs the "monitor timer expiration" event described by step 710 or the steps 712, 714, and 716 downstream of step 710.

*See* Ex. 1 (Goossen Inf. Report) ¶¶ 240–244 (discussing steps 706 and 708 only).  In other words, Dr. Goossen analyzed only two of the five steps required by this part of the algorithm.

    ***As for the 13 steps shown in Figure 7B***, Dr. Goossen provides no substantive analysis. Dr. Goossen begins by opining that steps 730-754 shown in Figure 7B relate to "handling sensor input."  Ex. 1 (Goossen Inf. Report) ¶ 241.  Dr. Goossen goes on in conclusory fashion to opine that "███████████████████████████████████████ █ ████████████ ████████████████████████ █ ██ ████████████████████████████."  *Id.* ¶ 241.  He provides *no* analysis as to any of the specific steps shown in Figure 7B and required as corresponding structure.

    ***And as to the steps shown in Figure 7C***[5], Dr. Goossen explains in general terms that the steps "relate to the output to the power supply," without any explanation of how Apple's Accused Products supposedly perform the steps.  Ex. 1 (Goossen Inf. Report) ¶ 243.  Specifically, Dr. Goossen fails to identify user controls in the Accused Products (much less a change) that trigger the steps of Figure 7C.

---

[5] As a threshold issue, the steps in Figure 7C come into play only if a change in the user controls occurs.  Ex. 9 ('830 Patent) at 8:20–22.  In that case, in step 760, the variables mode and strength are set to the currently selected mode and vibrational strength, represented by the current states of the control features in the user interface.  *Id.* at 8:21–26.  In step 762, the routine "control" calculates an output value p corresponding to the currently selected strength, stored in the variable strengths, and outputs the value p to the power supply so that the power supply outputs an appropriate current to the coil.  *Id.* at 8:26–30.  Finally, in step 764, the last step of Figure 7C, the "control" routine computes a new monitor timer interval and resets the monitor timer.  *Id.* at 8:20-22, 8:30-33.  Dr. Goossen fails to identify user controls in the Accused Products (much less a change) that trigger the steps of Figure 7C.  Dr. Goossen also does not identity a "variable mode" or "vibrational strength" specified by "control features in the user interface" of the Accused Products.  Nor does Dr. Goossen identify a control routine in the Accused Products for computing a new monitor timer internal or resetting the monitor timer.

Thus, Resonant has not, and cannot, show that the accused products have the same corresponding structure as required by the claim. *Traxcell*, 15 F.4th at 1128.

Nor has Resonant shown that any structure or algorithm used in the accused iPhones is equivalent to the corresponding structure of the "control component…" limitation. To show equivalence, Resonant must adduce evidence that the accused structure and the claimed structure "perform the identical function in substantially the same way, with substantially the same result." *Id.* Nowhere in Dr. Goossen's report does he perform any analysis as to whether the accused algorithm and the claimed algorithm operate in the same ***way***, nor does he provide any analysis as to ***result***. These failures are fatal to both any attempt to prove equivalence under Section 112(6) or the doctrine of equivalents. *SPEX Techs., Inc. v. W. Digital Corp.*, 859 F. App'x 557, 561 (Fed. Cir. 2021) (affirming grant of summary judgment because expert "[f]ailed to explain how the accused products perform the claimed function in substantially the same way to achieve substantially the same result…"); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1346 (Fed. Cir. 2016) (finding that accused products are not equivalent under Section 112, ¶ 6 because plaintiff failed to explain how differences between accused product and claims were insubstantial); *see also Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000) ("Because the 'way' and 'result' prongs are the same under both the section 112, paragraph 6 and doctrine of equivalents tests, a structure failing the section 112, paragraph 6 test under either or both prongs must fail the doctrine of equivalents test for the same reason(s).").

The Federal Circuit's decision in *Traxcell* is instructive, if not dispositive. In *Traxcell*, a patentee failed to prove that the accused product performed all steps of a corresponding-structure algorithm and attempted to resort to equivalence—much as it appears Resonant is attempting here. *Traxcell*, 15 F.4th at 1128. Just as here, the algorithm "include[d] numerous steps necessary for

its function." *Id.* at 1129. The patentee, though, "neglected to address a significant fraction of that structure" and "instead discussed the accused technology at only a generalized level and didn't at all discuss at least nine entire steps of the algorithm—focusing on function and results but eliding the way those results are achieved"—again just as Dr. Goossen did here. *Id.* Accordingly, the Federal Circuit affirmed and agreed with the District Court's grant of summary judgment because the patentee "didn't provide enough evidence for a reasonable jury to conclude that the accused structure performs the claimed function in 'substantially the same way' as the disclosed structure." *Id.* This Court should do the same and grant Apple summary judgment because of Resonant's failure to adduce evidence as to whether any algorithm in the accused products is the same as or equivalent to the algorithm *required* by the claim.

**F.    Apple Does Not Infringe the Asserted Claims of the '767 and the '830 Patents Because the Accused Products Do Not Contain the Claimed "Driving Component"**

Resonant has no evidence to support infringement for the "driving component" limitation of the asserted independent claims for the '767 and '830 patents,[6] and thus summary judgment of non-infringement as to all asserted claims is warranted.

As construed by this Court, the "driving component…" limitation in the '767 and '830 patents is a Section 112, ¶ 6 limitation. For the '767 patent the Court identified the following function and corresponding structure:

> <u>Function</u>: driving the moveable component in each of two opposite directions;
>
> <u>Structures</u>: coils 420, 514, 626, 1202, 1204, 1302, 1304, 1412, 1414, 1510 (also shown in Figs. 16-17); electromagnets shown in Figs. 10-11; and equivalents thereof.

---

[6] Dr. Goossen performs absolutely no analysis of claims 2-5 of the '767 patent; his analysis is solely as to claim 1.

D.I. 91 at 1-2.

For the '830 patent, the Court identified the following function and corresponding structure:

> Function:   driving the moveable component to oscillate within the housing;
>
> Structures: coils 420, 514, 626, 1202, 1204, 1302, 1304, 1412, 1414, 1510 (also shown in Figs. 16-17); stator coils of Figs. 24A, 24B, 25; electromagnets shown in Figs 10-11; and equivalents thereof.

D.I. 91 at 2.

To prove infringement, Resonant must explain how each accused product "(1) perform[s] the identical function recited in the means limitation and (2) perform[s] that function using the structure disclosed in the specification or an equivalent structure." *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1548 n.8 (Fed. Cir. 1994); *see also Traxcell*, 15 F.4th at 1128 (explaining that "[l]iteral infringement of a means-plus-function claim limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification" (internal quotation marks omitted)).

As explained in the concurrently filed motion to exclude testimony from Dr. Goossen, Dr. Goossen's analysis of this limitation should be excluded under FRE 702. If the Court grants Apple's motion to exclude, summary judgment would be appropriate as Resonant would not have any competent expert testimony regarding this limitation and thus could not satisfy its burden at trial. *Centricut*, 390 F.3d at 1370; *see also AquaTex*, 479 F.3d at 1329.

Even if this Court does not exclude Dr. Goossen's testimony, summary judgment is warranted because Dr. Goossen's testimony is insufficient to create any genuine dispute of material fact as to whether the accused products meet this limitation. In his report, Dr. Goossen

offers only a single paragraph regarding alleged infringement of this limitation for the '767 patent, reproduced in its entirety below:



Ex. 1 (Goossen Inf. Report) ¶ 196.  Dr. Goossen's earlier referenced discussion (section IX.A.1) provides only a high-level overview of his view as to the operational principles of the Taptic engine, without discussing individual products or this Court's claim construction.  At trial, Dr. Goossen's testimony would not be permitted to go beyond the scope of what was disclosed in this report.  *See* Fed. R. Civ. P. 26, 37.

Notably, in this portion of his report, Dr. Goossen fails to provide an opinion that creates any genuine dispute as to either the recited function or the corresponding structure.  Indeed, his opinion concerning the "driving component…" limitation does not even appear to acknowledge that this limitation was construed pursuant to Section 112, ¶ 6, much less perform any analysis that the recited function is performed "using the structure disclosed in the specification or an equivalent structure."  *Kearns*, 32 F.3d at 1548 n.8.  Rather, the entirety of his testimony is that—without identifying any specific structures in the accused products—the "driving component is a coil," apparently believing that this limitation can be met by any "coil" that allegedly performs the claimed function.  *See* Ex. 1 (Goossen Inf. Report) ¶ 196.

This is not enough.  As the Federal Circuit has explained, a patentee must show that corresponding structure is present in the accused device.  *See Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999) ("Functional identity and either structural identity or

equivalence are *both* necessary."); *see also Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1299 (Fed. Cir. 2009) ("It is firmly established in our precedent that a structural analysis is required when means-plus-function limitations are at issue; a functional analysis alone will not suffice.").

The corresponding structure here is not just any "coil."  Rather, it is the specific coils **disclosed in the specification** of the '767 patent (or their equivalents).  *See* 35 U.S.C. § 112, ¶ 6 (means-plus-function claims "cover the corresponding structure, material, or acts **described in the specification** and equivalents thereof" (emphasis added)).

Dr. Goossen does not identify which of these corresponding structures disclosed in the specification are in the accused products, much less explain how or why.  Nor does Dr. Goossen provide any discussion as to whether he believes the structures in the accused products are equivalent to the structures from the specification.  Thus, summary judgment should be granted as to all claims of the '767 patent because Resonant cannot meet its burden of proof that the accused products contain a "driving component" as claimed.

Dr. Goossen's analysis of the "driving component" in the '830 patent is even sparser than his analysis of the "driving component" in the '767 patent.  The entire analysis reads:



Ex. 1 (Goossen Inf. Report) ¶ 225.  As before, this testimony is not enough for Resonant to meet its burden.  For one, the "analysis" eschews any comparison of any corresponding structure from the specification of the '830 patent to any component in the accused products.  *See Fresenius*, 582 F.3d at 1299 (granting JMOL where plaintiff failed to identify any corresponding structure).  Just

as with the '767 patent, the required corresponding structure isn't merely a "coil" or an "electromagnetic coil" – it is the *specific* structures from the specification that must be shown in the accused products. And Dr. Goossen's analysis is devoid of any analysis, or even opinion, that the structures in the accused products are "equivalent."

## IV. MSJ TWO: THERE ARE NO GENUINE ISSUES OF MATERIAL FACT REGARDING WILLFUL INFRINGEMENT

Summary judgment of no willful infringement is appropriate because Resonant has not alleged any claim for pre-suit willfulness, and its post-suit willfulness claim fails as a matter of law. Without a pre-suit willfulness case, Resonant attempts to advance a novel legal theory contrary to legal precedent and this Court's prior rulings—that willful infringement should be based on Apple simply continuing its ordinary course of business while this case is pending. No court has ever held that a defendant must halt its normal commercial activity or develop a redesigned product to avoid a charge of willfulness just because a lawsuit was filed and before any judgment on the merits, absent an injunction. Because Resonant's post-suit willful infringement case has no basis in fact or in law, the Court should grant summary judgment of no post-suit willful infringement.

### A.    Willfulness Requires Evidence of Deliberate and Intentional Infringement

Willful infringement is a fact question requiring a finding of deliberate or intentional infringement. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 2732 (2022) ("*SRI IV*") (citing *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020)). "Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). To prove willfulness, Resonant also "must show that [Apple] had a specific intent to infringe at the time of the challenged conduct." *BASF*

*Plant Sci., LP v. Commonwealth Sci. & Indus. Research Org.*, 28 F.4th 1247, 1274 (Fed. Cir. 2022) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016). Specific intent requires, at a minimum, knowledge that an act constitutes infringement, and a disregard of the same. *See Boston Scientific Corp. v. Nevro Corp.*, 560 F. Supp. 3d 837, 842 (D. Del. 2021); *Halo Elecs.*, 579 U.S. at 103-104.

### B. Resonant Cannot Prove (And Has No Evidence to Show) That Apple Deliberately or Intentionally Infringes

By Resonant's own admission, pre-suit willfulness is not in this case. D.I. 94, ¶¶ 32–33; Ex. 10 (4/1/25 Hr'g Tr.) at 13:14–17 ("[Resonant is] not alleging pre-suit willfulness and there's nothing in the case ██████████████████████████████████████.

Rather, Resonant hinges its entire willfulness case on Apple's post-suit conduct—a claim it didn't even make until three weeks after the *Markman* Order with its Second Amended Complaint (D.I. 94). Resonant claims that Apple's infringement was willful based on Apple's "knowledge of [Resonant's] allegations of infringement at least since receiving service of this lawsuit no later than June 7, 2023" and Apple's receipt of Resonant's infringement contentions on October 5, 2023. *Id.* ¶¶ 32, 33. Further, Resonant alleged that Apple's post-suit conduct— including its failure to "cease its infringement or modify the Accused Products to design around the Asserted Patents"—establishes Apple's willful infringement. *Id.*

This Court has already indicated that such allegations are unlikely to succeed. Ex. 10 (4/1/25 Hr'g Tr.) at 23:4–9 ("It's clear. [Resonant is] alleging willfulness once [Apple] had notice of the suit. Which in [this Court] is usually not much of a claim."). This Court's initial reaction was correct. Courts throughout the country regularly find that routine, post-suit conduct after the filing of a complaint, such as Apple's here, is legally insufficient to demonstrate willful infringement.

It is a well-established principle that "post-complaint offering of the accused products is insufficient to create a fact issue regarding post-suit willfulness." *NexStep, Inc. v. Comcast Cable Comm's, LLC*, 2021 WL 4077778, at \*13 (D. Del. Aug. 20, 2021), *report and recommendation adopted in pertinent part*, 2021 WL 4207442; *see also Vaporstream, Inc. v. Snap Inc.*, 2020 WL 136591, at \*20-21 (C.D. Cal. Jan. 13, 2020) (granting summary judgment of no willful infringement, citing *Universal Elecs. Inc. v. Roku, Inc.*, 2019 WL 1877616, at \*14 (C.D. Cal. Mar. 5, 2019) (noting majority of courts in Ninth Circuit have held "knowledge and continued infringement alone" are insufficient)); *see also Acceleron, LLC v. Dell Inc.*, 2022 WL 1087683, at \*4-5 (N.D. Ga. Mar. 7, 2022) (denying motion for new trial, affirming Rule 50(a) judgment of no willful infringement, and rejecting argument that continued sale of allegedly infringing products was sufficient); *see also Intellectual Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 612 (D. Del. 2017) (granting summary judgment of no willfulness, even where accused infringer continued to "update, produce, and sell" the accused product, as that was merely "typical infringement" behavior).

There are no facts that show Apple deliberately or intentionally infringes the asserted patents. Resonant cannot point to ***any*** evidence that Apple subjectively believes it infringes the asserted patents. D.I. 96, ¶¶ 32, 33; Ex. 11 (Resonant Resp. to Apple Rog No. 17) (referring only to Resonant's Second Amended Complaint). To the contrary, Apple's stated noninfringement and invalidity positions, including *inter alia* the noninfringement summary judgment arguments above, reflect Apple's sincere and vehement belief that it has not and does not infringe any valid, enforceable claims of the asserted patents.

Where no evidence of any intentional or deliberate infringement exists, this Court (along with many others) routinely dispenses of willfulness claims at summary judgment or as a matter

of law at trial.  *Pasafeshare LLC v. Microsoft Corp.*, No. 6:20-cv-00397-ADA, D.I. 244 (W.D. Tex. Mar. 17, 2025) (granting summary judgment of no willful infringement); *AlmondNet, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-00898-ADA, D.I. 244 (W.D. Tex. Apr. 18, 2024) (same); Ex. 22 (Redacted Pretrial Conference Transcript from *Arigna Tech. Ltd. v. Apple Inc.*, No. W-21-CV-00943-ADA, D.I. 279 (W.D. Tex. Aug. 19, 2023)) at 160:19–164:18 (granting summary judgment of no willful infringement under similar circumstances); *Global eTicket Exchange Ltd. v. Ticketmaster LLC*, No. 6:21-cv-00399-ADA, D.I. 161 (W.D. Tex. Mar. 15, 2023) (report and recommendation granting summary judgment of no willful infringement), *adopted* D.I. 189 (W.D. Tex. Apr. 25, 2023); *WSOU Investments LLC v. Google LLC*, No. 6:20-cv-00585-ADA, D.I. 273 (W.D. Tex. Dec. 6, 2023) (granting Rule 50(a) judgment as a matter of law of no willful infringement).  The same result should apply here.

Separate and aside from Resonant's evidentiary failure on post-suit infringement allegations—even if taken as undisputed and true (which they are not)— Resonant simply cannot sustain willful infringement as a matter of law.

*The Institution of Apple's Inter Partes Review Proceedings Against Each Asserted Patent:* Apple's also has a good faith belief that Resonant's patents are invalid.  For example, Apple filed petitions for *inter partes review* of all four of Resonant's asserted patents—all of which the Board has instituted against all asserted claims.[7]  *See Apple Inc. v. Resonant Sys., Inc.*, Nos. IPR2024-00697, -00698, -00806, -00807, and -00983.  Apple expects that the Board will find each of

---

[7] In addition to Apple's IPRs, Samsung filed an IPR petition against Resonant's '830 patent. *Samsung Electronics Co., Ltd. v. Resonant Sys., Inc.*, IPR2023-00993.  On January 8, 2025, the Board found that claims 1, 2, 7, 8, 15–18, and 20 of the '830 patent are unpatentable in view of the prior art.  *Id.*, D.I. 48 (Final Written Decision).  The unpatentable claims of the '830 patent are not patentably distinct from claim 1 of the '767 patent or claims 2–3 of the '337 patent, which Resonant asserts here.  The Board's finding of unpatentability adds further to Apple's good faith belief that Resonant's patents are invalid.

Resonant's asserted claims invalid.  As such, Apple's ongoing good-faith belief of the asserted patents' invalidity is sufficient to find no willfulness as a matter of law.  *See Stoller Enterprises, Inc. v. Fine Agrochemicals Ltd.*, 705 F. Supp. 3d 774, 792 (S.D. Tex. 2023) (granting summary judgment of no willful infringement).

> <u>*Apple's Continued Sale of the Accused Products*</u>:  Resonant's willfulness claim rests on Apple's continued commercial activities post-suit.  D.I. 96, ¶¶ 32–33.  But Apple's continued sales of its products prove quite the contrary point, as a defendant's "ongoing manufacturing and sales [are] consistent with a defendant who subjectively believes the plaintiff's patent infringement action has no merit."  *Slot Speaker Technologies, Inc. v. Apple, Inc.*, 2017 WL 4354999, at *2 (N.D. Cal. Sept. 29, 2017).  In fact, the continued sale of accused products is "standard practice, not egregious, in patent cases … where the usual course is that the defendant keeps on selling the accused product or practicing the accused method after the lawsuit is filed."  *NexStep*, 2021 WL 4077778 at *13 (citing *Bioverativ Inc. v. CSL Behring LLC*, 2020 WL 1332921, at *3 (D. Del. Mar. 23, 2020) (granting summary judgment of no willfulness)).  Furthermore, "it seems beyond the pale to expect every patent defendant to 'cease all allegedly infringing conduct once a complaint is filed' to force them to avoid enhanced damages for willful infringement."  *Ravgen, Inc. v. Quest Diagnostics Inc.*, 2022 WL 2047613, at *3 (C.D. Cal. Jan. 18, 2022) (dismissing post-suit willfulness claim) (citing *M&C Innovations, LLC v. Igloo Prods. Corp.*, 2018 WL 4620713, at *5 (S.D. Tex. July 31, 2018)).  The use of patent law to impose such a draconian measure on the steady flow of commerce has never been endorsed by any court, especially where, as in Resonant's case, the plaintiff has never sought any preliminary or permanent injunctive relief and did not raise a willfulness claim until 18 months ***after*** filing suit.  *Compare* D.I. 1 and D.I. 18 with

D.I. 96, ¶¶ 32–33.  Thus, Apple's routine, continued sale of its products does not raise triable factual issues as to willful infringement.[8]

    _Apple's Refusal to Design Around or Alter the Accused Products_: Resonant alleges that Apple has "not modif[ied] the Accused Products to Design around the Asserted Patents."  D.I. 96, ¶ 32.  Even if true, no reasonable jury can find willful infringement based on these assertions.  A defendant's "failure to adopt a non-infringing alternative is [] not sufficient to support a finding of willfulness."  _NexStep_, 2021 WL 4077778 at *13–14 (D. Del. Aug. 20, 2021).  The law places the burden on Resonant to prove infringement at trial; it does not place the burden on Apple to "mitigate"—by redesigning its product, taking a license, or otherwise—where no judgment on the merits has been found on the issues of infringement.  Courts have never applied patent law to coerce a company to enter a license or invest in design-arounds any time there is alleged and not yet proven infringement.  Resonant's assertions aim to push the law to where no court has gone before.  _Id._ at *14; _SRI IV_, 14 F.4th at 1330.  Such a threadbare legal theory, contrary to the public policy surrounding patent protection, should not be allowed to survive summary judgment.  Summary judgment of no willful infringement is appropriate.[9]

---

[8] _See also Gustafson, Inc. v. Intersystems Indus. Prods., Inc._, 897 F.2d 508, 510–11 (reversing finding of willfulness based on defendant's post-suit knowledge of the patents and the continued sale of the accused products); _Shopify Inc. v. Express Mobile, Inc._, 2021 WL 4288113, at *20 (D. Del. Sept. 21, 2021) (granting summary judgment of no willfulness where defendant was put on notice of the alleged infringement by filing of a complaint, finding that the allegations of infringement "were no more than garden-variety allegations, which are insufficient to support a finding of willfulness.").

[9] The lack of any assertion that Apple knew of the asserted patents prior to the filing of the complaint should also compel summary judgment of no post-suit willfulness.  Apple recognizes that this Court has not adopted the rule that a complaint cannot serve as notice of infringement, _see, e.g., BillJCo, LLC v. Apple Inc._, 583 F. Supp. 3d 769, 778 (W.D. Tex. 2022), but given the lack of binding Federal Circuit authority on this point, Apple moves the Court to follow the numerous courts that have found that the filing of a complaint cannot be used to establish notice for a willfulness claim, reasoning that "[t]he purpose of a complaint is to obtain relief from an

## V.    MSJ THREE:  RESONANT CANNOT PROVE IT IS ENTITLED TO ITS CLAIMED PRIORITY DATES

Apple moves for summary judgment that the asserted claims of three asserted patents (Exs. 6, 9 and 12 ('767, '830, and '882 patents)) are not entitled to their claimed priority dates.  Resonant has taken no steps to meet its burden of proving that each asserted claim of the '767, '830, and '882 patents has written description and enablement support in the provisional application to which it claims priority.  Resonant's expert has no opinion on the matter, and Resonant did not substantiate its claim of priority during discovery.  Resonant's priority claims are also unsupportable.  Summary judgment is proper.

### A.    Legal Standard:  Claiming Priority to Provisional Applications

"Determination of a patent's priority date is purely a question of law if the facts underlying that determination are undisputed."  *Droplets, Inc. v. E*Trade Bank*, 887 F.3d 1309, 1315 (Fed. Cir. 2018) (citing *Medtronic CoreValve, LLC v. Edwards Lifesciences Corp.*, 741 F.3d 1359 1363 (Fed. Cir. 2014)).

---

existing claim and not to create a claim."  *Boston Sci.*, 560 F. Supp. 3d at 845 (quoting *Helios Streaming, LLC v. Vudu, Inc.*, 2020 WL 3167641, at *2 n.1 (D. Del. June 15, 2020)); *see also Sprint Commc'ns Co. v. Atlantic Broadband Finance LLC*, 2021 WL 982735, at *2 (D. Del. Mar. 16, 2021); *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 646 (N.D. Cal. 2022), *leave to appeal denied*, No. 2022-134, 2022 WL 1486359 (Fed. Cir. May 11, 2022).  The same logic extends to Resonant's Second Amended Complaint as well.  *Pact XPP Schweiz AG v. Intel Corp.*, 2023 WL 2631503, at *5 (D. Del. Mar. 24, 2023).  When knowledge is based solely on the complaint, post-suit conduct cannot, as a matter of law, rise to the level of egregiousness required for willful infringement.  As the Supreme Court explained, enhanced damages under § 284 "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior."  *Halo Elecs.*, 579 U.S. at 93 (2016).  Where a defendant has no pre-suit knowledge of the patents, there is no behavior worthy of punishment.  After all, the "purpose of enhanced damages is to punish and deter bad actors from egregious conduct, not to provide a financial incentive for opportunistic plaintiffs to spring suits for patent infringement on innocent actors who have no knowledge of the existence of the asserted patents." *Boston Sci.*, 560 F. Supp. 3d at 844.  At a minimum, Apple includes this argument for preservation purposes.

A patent's claims are entitled to the filing date of an earlier application "only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) (internal quotation marks and citation omitted).  To establish priority to a provisional application, the written description of the provisional must "enable an ordinary skilled artisan to practice the invention claimed" and "adequately support the claims." *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1380 (Fed. Cir. 2017).  To have adequate written description under Section 112, the specification must reasonably convey to those skilled in the art that, as of the filing date, the inventor was in possession of what is claimed.  *See Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351–52 (Fed. Cir. 2010) (en banc).

### B.    Resonant Has Not Met, And Cannot Meet, Its Burden of Proving the '767 and '830 Patents' Priority Claims

Resonant has not even attempted to meet, and cannot meet, its burden of proving that the asserted claims of the '767 and '830 patents are entitled to the benefit of the filing date of U.S. Provisional Application No. 61/179,109 (the "'109 Provisional"), to which they claim priority. Apple had an initial burden of production to come forward with a *prima facie* case of invalidity based on art that intercedes the May 18, 2009, filing date of the '109 Provisional and the May 18, 2010, filing date of the non-provisional application that issued as the '767 patent.  *See, e.g.*, *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008).  Apple met that burden no later than when Dr. Zinn submitted his opening expert report.[10]  *Id.*  The burden then shifted to Resonant to demonstrate that its asserted claims are entitled to the '109 Provisional's filing date.

---

[10] Apple also met its initial burden of production—and shifted the burden to Resonant—on May 30, 2024 when Apple served its initial invalidity contentions.  There, Apple identified an interceding prior art reference (U.S. Patent No. 8,552,859 ("Pakula")), which was filed on September 30, 2009.

*See, e.g.*, *Pharmacyclics LLC v. Alvogen Pine Brook LLC*, 556 F. Supp. 3d 377, 390–91 (D. Del. Aug. 19, 2021) (articulating a burden shifting framework where the patentee bears the burden of production to come forward with evidence to support entitlement to a provisional priority date). Yet Resonant made no attempt to meet that burden, and the evidence shows Resonant cannot do so. Summary judgment is therefore appropriate.

### 1.    Resonant Has Done Nothing to Substantiate Its Claim of Priority

Resonant's discovery responses do not provide any of the analysis required by the Federal Circuit to substantiate a non-provisional application's claim to a provisional filing date. Ex. 13 (Resonant's 2/5/25 Rog Resp.). Resonant also has no expert testimony on the issue, as Dr. Goossen merely assumed that the May 18, 2009 priority date applied to certain asserted claims, but did not actual analysis himself. Ex. 4 (Goossen Dep. Tr.) at 42:23–25; Ex. 14 (Goossen Reb. Report) ¶¶ 145–147 ('767 patent); ¶ 166 ('830 patent). Neither of his reports analyzes the '109 Provisional in view of the '767 and '830 patent claims, nor does his rebuttal report address any of the opinions set forth by Apple's expert—Dr. Zinn—on the issue. In short, Resonant has not come forward with any evidence to demonstrate that the asserted claims are supported by the '109 Provisional under Section 112. *Pharmacyclics*, 556 F. Supp. 3d at 390–91. There is thus no genuine dispute of material fact that the '109 Provisional does not support the asserted claims; summary judgment is appropriate.

### 2.    The '109 Provisional Lacks Written Description Support for the Asserted Claims

That there is no written support for the asserted claims of the '767 and '830 patents should come as no surprise. The '109 Provisional discloses a vibration motor for use in a sex toy. It offers only high-level descriptions of the technology in its scant 6 pages. Resonant's asserted

patents, on the other hand, include lengthy claims directed to the way vibration modules are controlled and operate.  Resonant included no such details in the '109 Provisional.

The lack of written description support for a single limitation is sufficient to break the claim of priority.  *See, e.g.*, *D Three Enters., LLC v. SunModo Corp.*, 890 F.3d 1042, 1050 (Fed. Cir. 2018) (affirming no priority to earlier application for lack of written description of a single limitation).  Here, the '109 Provisional fails to provide any written support—let alone adequate written support—for multiple limitations of the asserted claims.  Each claim is addressed individually below.

### a.  There Is No Written Support for the "Control Component" Limitation of Claim 1 of the '767 Patent

The '109 Provisional fails to disclose the "control component" limitation of claim 1 of the '767.  Claim 1 recites a "control component" as follows:

> a control component that includes a microprocessor and that controls supply of power from the power supply to the driving component to cause the moveable component to linearly oscillate, the control component including, in addition to the microprocessor,
>
> > a control program, stored in one of a separated electronic memory or within the processor, that is executed by the microprocessor to control operation of the linear resonant vibration module, and
> >
> > a switch that receives a directional signal d from the processor and that selects a corresponding direction of the two opposite directions in which the driving component drives the moveable component,
>
> the control component receiving output signals from sensors within the linear resonant vibration module during operation of the linear resonant vibration module and adjusting one or more operational control outputs of the control component according to the received output signals from the sensors in order that subsequent operation of linear resonant vibration module produces desired outputs from the one or more sensors corresponding to one or more operational control parameters.

'767 Patent, Claim 1.  The Court construed this language to have its plain and ordinary meaning.

*See* D.I. 103.

To begin, the '109 Provisional does not explicitly refer to a "control component."  Ex. 15 (Zinn Opening Rpt.) ¶¶ 250–284.  Nowhere in the '109 Provisional does the disclosure discuss any control mechanism intended to be used to control operation of the vibrator.  All the '109 application discloses is the use of a generic "Microcontroller."  But this high-level disclosure lacks any detail to support the control component of claim 1.  Ex. 16 ('109 Provisional) at _0007496.  The '109 Provisional only explains that the microcontroller "sends pulses to the switching electronics that turn power on and off to the electromagnet…." *Id*.  The rest of the '109 Provisional discloses the mechanical operation of the vibration module but contains no discussion of any control component or operation of the microprocessor.

In the same vein, the '109 Provisional also does not discuss the claimed "control program"—a required aspect of the claimed control component.  The '109 Provisional provides a basic overview of how the device can be "programmed to sense the resonance frequency." *Id*.  It further explains that, in an embodiment where electromagnets are used, the microcontroller can create a rotational action "as desired or programmed." *Id*.  Apart from these generic references, the '109 Provisional does not discuss ***how*** the control program controls operation of a linear resonant vibration module.

The '109 Provisional also fails to provide any details concerning the switching mechanisms used to control operation of the driving coils.  For example, the '109 Provisional stays silent about how the switching mechanism operates.  Likewise, the '109 Provisional discloses nothing about the claimed "directional signal d."  While the '109 Provision discusses how "switching electronics" allow the CPU "to switch the power to the electromagnets on and off at high rates of speeds" (*id*. at 0007496), there is no discussion about of the switching electronics switching the direction of the current via a directional signal.  These details—all recited in claim 1—are

necessary for the operation of the claimed control component. Yet, the '109 Provisional says nothing about the components and functionalities.

In addition to failing to support claim 1, the entirety of the written description of the functionality of the control component limitation is absent from the '109 Provisional. For example, the algorithm of the control program run by the microcontroller is shown in Figures 7A-C of the '767 patent and described in columns 6 and 7. *See, e.g.,* Ex. 6 ('767 Patent) at 6:15-18 ("FIGS. 7A-C provide control-flow diagrams that illustrate the control program, executed by the CPU, that controls operation of an LRVM that represents one embodiment of the present invention.") Neither Figures 7A-C (which Resonant relied on to distinguish the prior art during prosecution), nor any description of any similar kind of control program, is present in the '109 Provisional. Moreover, the structure of the switches and their operation, including the use of directional signal d, described in column 5 of the '767 patent and shown in Figures 5A-B—appear nowhere in the '109 Provisional.

In sum, the '109 Provisional does not provide written description or enablement support for the "control component" limitation. This lack of written support in the '109 Provisional is sufficient to destroy Resonant's priority claim. Given that the "control component" limitation is not supported by the '109 Provisional—and Resonant has no expert opinion to state otherwise— the '767 patent is not entitled to the May 18, 2009 provisional filing date.

### b. There Is No Written Support for the "Control Component" Limitations of Claims 1, 3, and 4 of the '830 Patent

Like claim 1 of the '767 patent, the '109 Provisional does not provide written description support for the "control component" limitations of asserted claim 1of the '830 patent. The relevant control component limitation of claim 1 is copied below:

> 1. A vibration module comprising: … a control component that controls supply of power from the power supply to the driving component to cause

30

the moveable component to oscillate at a frequency and an amplitude specified by one or more stored values.

Unlike the control component limitation of the '767 patent, the Court construed the "control component" limitation of claim 1of the '830 patent under Section 112, ¶ 6.  D.I. 103. Under that construction, the claimed function is "control[ling] supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by one or more stored values" and the corresponding structure in the '830 patent for performing that function is "a microcontroller, a processor, a microprocessor, or a CPU that performs the algorithm shown in Steps 706 through 716 in Figure 7A, with reference to all steps shown in Figure 7B other than Step 734 and all steps shown in Figure 7C, or the algorithm described in the corresponding text, See, e.g., 7:20–7:34, 7:42– 7:52, 7:60–8:40, and equivalents thereof."  *Id.*

The '109 Provisional fails to disclose (let alone provide written description support for) any of the function or structure under the Court's construction.  Namely, the '109 Provisional contains no discussion of controlling supply of power to drive the component to "oscillate at a frequency and an amplitude specified by one or more stored values."  Moreover, the corresponding structure is not disclosed in the '109 Provisional.  The application does not disclose any algorithm or provide any other discussion of the steps performed in Figures 7A–7C of the '830 patent.  As discussed above, the '109 Provisional describes a microcontroller at a high-level, but provides no detail on how it works in the context of the claimed "control component" or how (or if) it performs the algorithm described by the '830 patent's figures and corresponding disclosure.  *See, e.g.*, *Uniloc USA Inc. v. Sega of American, Inc.*, 711 F. App'x 986, 989–92 (Fed. Cir. 2017) (affirming ruling that provisional patent application did not provide written description support for claimed "generating means" because it did not disclose a corresponding "summation algorithm").

### C.    Resonant Has Not Met, And Cannot Meet, Its Burden of Proving the '882 Patent's Priority Claim

Resonant also cannot meet its burden of proving the asserted claims of the '882 patent are entitled to the benefit of the filing date of U.S. Provisional Application No. 62/116,144 (the "'144 Provisional"), to which the '882 patent claims priority.  Apple had an initial burden of production to come forward with a *prima facie* case of invalidity based on art that intercedes the February 13, 2015, filing date of the '144 Provisional and the February 14, 2016, filing date of the non-provisional application to which the '882 patent claims priority.  *Tech. Licensing*, 545 F.3d at 1327.  Apple met that burden when Dr. Zinn opined that the asserted claims of the '882 patent would have been obvious in view of U.S. Patent No. 10,007,344 ("Hajati 344"), which has an effective filing date of September 30, 2015, in combination with other system prior art.  *See* Ex. 15 (Zinn Opening Report), ¶¶ 110, 553–588; *see also* Ex. 17 (Zinn Supp. Invalidity Report re Hajati).[11]  The burden then shifted to Resonant to demonstrate that the '144 Provisional adequately describes the asserted claims.  *See, e.g.*, *Pharmacyclics*, 556 F. Supp. 3d at 390–91.  Yet Resonant made no attempt to meet that burden.

Resonant could not meet that burden even if it tried.  As Dr. Zinn explains, the '144 Provisional lacks written description support for several limitations of the '882 patent's asserted claims.  Ex. 15 (Zinn Opening Report), ¶¶ 602-603.  For example, claims 1 and 10 recite "one or more sensors that output indications of the ***positions*** of the mass within the oscillation path at specific points in time," but the only sensors described in the '144 Provisional are sensors that "detect the resonant ***frequency***" of the mass.  *Id.* (emphasis added) (quoting '144 Provisional,

---

[11] Apple also met its initial burden of production when it served its Initial Invalidity Contentions on December 14, 2023, which further identified Hajati 344 and Apple's claim that the reference was entitled to an effective filing date of September 30, 2015.

specification at 3).  Nothing in the '144 Provisional shows the inventors had possession of an oscillating resonant module comprising sensors that output position.  *Id.*

As another example, the '144 Provisional does not provide any written support for the "control component" limitations of claims 1 and 10 of the '882 patent.  The Court construed these limitations under § 112, ¶ 6, holding the corresponding structure is "a microcontroller, a processor, a microprocessor, or a CPU that performs the algorithm shown in Figure 45 or the algorithm described in the corresponding text, and equivalents thereof."  D.I. 103 at 40 (citation omitted).  The '144 Provisional does not contain any mention of the algorithm shown in Figure 45 or described in the corresponding text of the '882 patent.  Resonant simply cannot show that it had possession of the specific algorithm that the Court has adopted as part of the claimed "control component" as of the date of the provisional application's filing.

Resonant's expert Dr. Goossen does not dispute these facts.  Instead, he incorrectly asserts that he "need not . . . analyze that issue" because Apple allegedly "made no attempt" to show Hajati 344's effective filing date is September 30, 2015, rather than its actual filing date.  Ex. 14 (Goossen Reb. Report), ¶¶ 202, 207.  In truth, months before Dr. Goossen submitted his rebuttal report, Apple served Resonant a detailed analysis showing Hajati 344 is entitled to the benefit of U.S. Provisional Application No. 62/234,880 because every element of Hajati 344's claim 1 is expressly disclosed, almost word-for-word, in the '880 application.  Ex. 18 (Apple 2nd Suppl Resp to Rog No. 5) at 24-25.  Moreover, Dr. Goossen admitted this fact during his deposition.  Ex. 4 (Goossen Dep. Tr.) at 244:19-245:3, 247:9-248:19.  The Court should therefore reject any argument from Resonant that the priority date of the '882 patent's asserted claims is not at issue.

## VI.    MSJ FOUR:  APPLE IS ENTITLED TO SUMMARY JUDGMENT OF NO PRE-SUIT DAMAGES FOR THE '767 PATENT

Apple moves this Court for summary judgment that Resonant is not entitled to pre-suit damages for alleged infringement of the '767 patent.

To obtain pre-suit damages, a patentee must show either consistent and continuous marking of the patented products or actual notice of infringement (not merely notice of its patents).  35 U.S.C. § 287.  Resonant did neither for the '767 patent.  During its time as a technology company, Resonant offered for sale the Revel Body Sonic Vibrator.  *See, e.g.,* Ex. 19 (APL-RES_00822720).  Resonant marked the Revel Body's user guide with the '767 patent but failed to mark the product itself.  Under *Arctic Cat's* low burden of production, 876 F.3d at 1368, Apple notified Resonant its marking was inadequate on January 13, 2025.  *See, e.g.,* Ex. 20 (1/13/25 *Arctic Cat* letter).  Apple's January 13, 2025, notification shifted the burden to Resonant to prove either (1) that the Revel Body was properly marked or (2) that the Revel Body did not practice the '767 patent.  Resonant did neither and discovery has long since closed.  Because there is no genuine dispute of material fact that Resonant failed to properly mark the Revel Body, Apple is entitled to summary judgment on Resonant's claim of pre-suit damages as to the '767 patent.

### A.    Relevant Legal Standards: Marking

A patentee "is entitled to damages from the time when it either began marking its product in compliance with Section 287(a) or when it actually notified [the accused infringer] of its infringement, whichever was earlier." *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993).  The patent owner bears the burden of proving notice, either actual or constructive.  *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894) (cited in *Arctic Cat*); *see also VLSI Tech. LLC v. Intel Corp.*, 2021 WL 2773013, at *3 (W.D. Tex. Apr. 12, 2021).  Marking "must be substantially consistent and continuous in order for the party to avail itself of the constructive

notice provisions of the statute." *Id.* The patentee must mark the actual product sold and can only substitute by marking the packaging of the product if "from the character of the article" marking of the physical product cannot be done. 35 U.S.C. § 287. Courts regularly grant summary judgment where there is no evidence that the patentee marked as required by Section 287. *See, e.g.*, *VLSI*, 2021 WL 2773013 at *4 (granting summary judgment of no pre-suit damages based on failure to mark); *Cybiotronics, Ltd. v. Golden Source Elecs. Ltd.*, 130 F. Supp. 2d 1152, 1160-61 (C.D. Cal. 2001) (same).

### B. Resonant Cannot Recover Pre-Suit Damages on the '767 Patent

Resonant cannot recover pre-suit damages for the '767 patent because it cannot show either (1) that it provided Apple with actual notice of alleged infringement prior to filing the complaint, or (2) that it complied with Section 287's marking requirement. *See Motorola, Inc. v. United States*, 729 F.2d 765, 770 (Fed. Cir. 1984). It is undisputed—indeed Resonant did not even plead it—that Resonant did not provide Apple with actual pre-suit notice. *See generally* D.I. 20. Resonant also cannot show compliance with the marking requirement.

### 1. Apple Timely Identified an Unmarked Patented Article

To determine compliance with Section 287, Apple "bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Arctic Cat*, 876 F.3d at 1368. The Federal Circuit made plain "this is a low bar," and "[t]he alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent." *Id.* Apple exceeded this low bar. During fact discovery, Apple identified the Revel Body as an unmarked patented article to the '767 patent. Ex. 20 (1/13/25 *Arctic Cat* letter). As Apple explained, Revel should have—but failed—to mark the Revel Body product itself (rather than the mark the user guide) with the '767 patent number. *Id.* Apple's notice met its initial burden of production under *Arctic Cat*. *Kaist IP*

*US LLC v. Samsung Elecs. Co.*, 2018 WL 10498197, at \*3 (E.D. Tex. May 22, 2018) ("The court's choice of words requires no more than 'belief,' 'articulation,' 'notice,' and 'specificity' to meet a 'low bar.'").

### 2.    Resonant Cannot Prove Compliance with the Marking Statute

Under step two of *Arctic Cat*, once Apple identified the unmarked patented article, Resonant bore the burden to prove compliance with the marking statute. *See Arctic Cat*, 876 F.3d at 1368. To meet this burden, Resonant must prove either (1) "the products identified do not practice the patented invention" or (2) that they were properly marked. *Id.* at 1368. To avoid summary judgment, Resonant must identify a genuine dispute of material fact as to whether the identified Revel Body product met either of these two requirements. *Mass. Inst. of Tech. v. Abacus Software, Inc.* ("*MIT*"), 2004 WL 5268123, at \*7 (E.D. Tex. Aug. 4, 2004). Resonant has not and cannot meet this burden.

Resonant does not dispute that, at the time of its sale, the Revel Body practiced one or more claims of the '767 patent. However, Resonant contends that it satisfied the marking requirement of Section 287 because the Revel Body ***user guide***—as opposed to the ***product*** itself—was marked. *See* Ex. 13 (Resonant 2/5/25 Resp. to Rog No. 10) ("Revel's marking, particularly in circumstances such as here involving a personal health product composed of specialized materials designed to distinguish the product in the market, was permissible and adequate under the law."). Resonant's theory is incorrect both factually and as a matter of law.

Factually, Resonant has no support to claim that its product was not amenable to marking. Neither Resonant nor its expert explained what these "specialized materials" were, nor why they prevented Resonant from marking the Revel Body product, as opposed to the user guide. But it is clear from the evidence Resonant has produced that it ***could have*** marked the Revel Body product itself but chose not to. For example, as shown below, the vibration controls of the Revel Body

product are etched into the product's silicon.  Ex. 21 (REVEL-APPLE-0010007).  Resonant has

offered no explanation as to why the Revel Body could not have been similarly marked any other

discrete location of the silicon body with the '767 patent number.



Legally, Resonant's theory also has no support.  Courts have granted summary judgment

of no pre-suit damages for failure to mark in nearly identical circumstances.  For example, in

*Contour IP Holding, LLC v. GoPro, Inc.*, defendant GoPro moved for partial summary judgment

of no pre-suit damages based on Contour's (the patent owner's) failure to mark its practicing

products, compact all-terrain video cameras.  2020 WL 5106845, at *7 (N.D. Cal. Aug. 31, 2020).

The patent-holder argued (as Resonant does here) that "it was sufficient that the user manual

pointed the public to a website with patent information."  *Id*.  Again, like Resonant here, the patent-

holder in *Contour* argued, without evidence, that "it would have been impossible or impractical to

mark the camera itself in a meaningful and lasting way."  *Id*.  The Court found the patent-holder

markings efforts were insufficient as a matter of law.  *Id*; *see also Metrologic Instruments, Inc. v.

PSC, Inc.*, 2004 WL 2851955 at *17-21 (D.N.J. Dec. 13, 2004) (granting summary judgment of

no pre-suit damages where it was clear the patent-holder could have, but did not, mark the

practicing products (bar code scanners) and instead marked their packaging); *Meridian Mfg., Inc.

v. C&B Mfg., Inc.*, 340 F. Supp. 3d 808, 841-43 (N.D. Iowa 2018) (granting summary judgment

of limited pre-suit damages for failure to mark where patent-holder alleged it would be impractical to mark the products (seed carts) due to the volume of products sold, but failed to offer any supporting evidence).

As in *Contour*, Resonant's evidence that it was impractical to mark the Revel Body product itself is insufficient as a matter of law and the Court should grant summary judgment of no pre-suit damages arising from the '767 patent.

## VII.    CONCLUSION

For the reasons above, Apple respectfully requests that this Court grant summary judgment in its favor and against Resonant as to each of the claims and defenses discussed above.

Date: May 19, 2025                           Respectfully submitted,

                                             */s/ Karrie Wheatley*
                                             Roger A. Denning (Cal. Bar No. 228998)
                                             denning@fr.com
                                             Michael A. Amon (Cal. Bar No. 226221)
                                             amon@fr.com
                                             Ryan O'Connor (Cal. Bar No. 304815)
                                             oconnor@fr.com
                                             Oliver Richards (Cal. Bar No. 310972)
                                             orichards@fr.com
                                             Joy Backer Kete (Mass. Bar No. 694323)
                                             kete@fr.com
                                             James Yang (Cal. Bar No. 323287)
                                             jyang@fr.com
                                             FISH & RICHARDSON P.C.
                                             12860 El Camino Real, Suite 400
                                             San Diego, CA 92130
                                             Tel: (858) 678-5070 / Fax: (858) 678-5099

                                             Ruffin B. Cordell (Tex. Bar No. 04820550)
                                             cordell@fr.com
                                             FISH & RICHARDSON P.C.
                                             1000 Maine Avenue, SW, Suite 1000
                                             Washington, DC 20024
                                             Tel: (202) 783-5070 / Fax: (202) 783-2331

                                             Kathryn Quisenberry (Tex. Bar No. 24105639)
                                             quisenberry@fr.com
                                             Karrie Wheatley (Tex. Bar No. 24098605)
                                             wheatley@fr.com
                                             Joshua H. Park (Tex. Bar No. 24121766)
                                             jpark@fr.com
                                             FISH & RICHARDSON P.C.
                                             909 Fannin Street, Suite 2100
                                             Houston, TX 77010
                                             Tel: (713) 654-5300 / Fax: (713) 652-0109

                                             Steven J. Wingard (Tex. Bar No. 00788694)
                                             swingard@scottdoug.com
                                             SCOTT, DOUGLAS & McCONNICO, L.L.P.
                                             303 Colorado Street, Suite 2400
                                             Austin, Texas 78701
                                             Tel: (512) 495-6300 / Fax: (512) 495-6300

                                             **Attorneys for Defendant Apple Inc.**

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on May 19, 2025, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system:

*/s/ Karrie Wheatley*
Karrie Wheatley