# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# MIDLAND-ODESSA DIVISION

| | |
|---|---|
| RESONANT SYSTEMS, INC. d/b/a RevelHMI,<br><br>   *Plaintiff*,<br><br>v.<br><br>APPLE INC.,<br><br>   *Defendant*. | Case No. 7:23-cv-00077-ADA<br><br>JURY TRIAL DEMANDED<br><br>█████████ |

# APPLE INC.'S REPLY IN SUPPORT OF
# OMNIBUS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**PAGE**

I.    MSJ ONE: NON-INFRINGEMENT OF THE '337, '767, AND '830 PATENTS............ 1

    A.    Resonant Admits "There Is No Justiciable Issue Regarding the '337 Patent," So Summary Judgment Should Be Granted............................................... 1

    B.    Summary Judgment of Non-Infringement Should Be Granted As To All Products Dr. Goossen Did Not Analyze (All Asserted Patents)............................ 2

    C.    Accused Products that ███████████████████████ ███████████████████████ ....................................................... 4

    D.    Resonant Cannot Prove that the Accused Products Meet the "Control Component" Limitation ('830 Patent) Because Resonant Has Not Adduced Adequate Expert Testimony.................................................................... 7

    E.    Resonant Cannot Prove that the Accused Products Meet the "Driving Component" Limitation ('767 and '830 Patents) Because Resonant Has Not Adduced Adequate Expert Testimony............................................................. 8

II.   MSJ TWO: NO WILLFUL INFRINGEMENT................................................... 9

    A.    Resonant's Fabricated Post-Verdict, Post-Appeal Willfulness Case Is Beyond the Bounds of the Law, So Summary Judgment Should Be Granted.................................................................................................... 9

        1.    Resonant Fails to Raise a Triable Issue for Willfulness. .......................... 10

        2.    Resonant's Claim That Apple Must "Promise to Stop Infringing" is Unfounded and Contrary to the Law. ...................................................... 12

        3.    Resonant Does Not Distinguish Any of Apple's Cases or Arguments................................................................................................ 12

III.  MSJ THREE: NO ENTITLEMENT TO ASSERTED PRIORITY DATES.................... 13

    A.    Resonant Admits It Will Not Rely on Its Provisional Application Priority Dates, So Summary Judgement Should Be Granted............................................ 13

    MSJ FOUR: NO PRE-SUIT DAMAGES FOR THE '767 PATENT. ............................ 14

    A.    Apple Is Entitled to Summary of No Pre-Suit Damages for the '767 Patent Because Resonant's Belated Attempts to Create Marking Evidence Are

Insufficient and It Failed to Offer Evidence of Marking During Fact
Discovery. ................................................................................................ 14

1.    The Court Should Ignore Mr. Elenga's Untimely, Contradictory,
and Self-Serving Declaration. ................................................ 14

2.    There Is No Record Evidence of Compliance with § 287(a). ................... 16

3.    Mr. Elenga's Declaration Does Not Create a Fact Issue. ........................ 17

V.    CONCLUSION ............................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alloc, Inc. v. Pergo, LLC*,
751 F. Supp. 2d 1049 (E.D. Wis. Sept. 30, 2010) ........................................................................4

*AlmondNet, Inc. v. Amazon.com, Inc.*,
No. 6:21-cv-00898-ADA, D.I. 244 (W.D. Tex. Apr. 18, 2024) ............................................13

*Apple Inc. v. MPH Techs. Oy*,
28 F.4th 254 (Fed. Cir. 2022) ...........................................................................................5, 6

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017) ..........................................................................................14

*BHI Energy I Power Servs., LLC v. KVP Energy Servs., LLC*,
2023 WL 223179 (N.D. Tex. Jan. 17, 2023) ......................................................................15

*Cleveland v. Policy Mgmt. Sys. Corp.*,
526 U.S. 795 (1999) ............................................................................................................14

*Contour IP Holding, LLC v. GoPro, Inc.*,
2020 WL 5106845 (N.D. Cal. Aug. 31, 2020) ....................................................................16

*Delgado v. McHugh*,
2011 WL 11741023 (W.D. Tex. Nov. 21, 2011) .................................................................15

*Denneroll Holdings Pty Ltd. v. Chirodesign Group, LLC*
No. 4:15-CV-740, 2016 WL 705207 (S.D. Tex. Feb. 23, 2016) .........................................19

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ............................................................................................................12

*EIS, Inc. v. IntiHealth Ger GmbH*
No. CV 19-1227-GBW, 2023 WL 6799332 (D. Del. Aug. 23, 2023) ..................................19

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010) ........................................................................................1, 9

*Haemonetics Corp. v. Fenwal, Inc.*,
2010 WL 4027794 (D. Mass. 2010) .....................................................................................5

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016) ..............................................................................................................10

*Kearns v. Chrysler Corp.*,
    32 F.3d 1541 (Fed. Cir. 1994)........................................................................................9

*Key Pharms. v. Hercon Lab'ys Corp.*,
    161 F.3d 709 (Fed. Cir. 1998)........................................................................................5

*Maxwell v. J. Baker, Inc.*,
    86 F.3d 1098 (Fed. Cir. 1996)......................................................................................14

*Medtronic Inc. v. Bos. Sci. Corp.*,
    558 F. App'x 998 (Fed. Cir. 2014) ............................................................................3, 4

*Medtronic, Inc. v. Bos. Sci. Corp.*,
    777 F. Supp. 2d 750 (D. Del. 2011), *aff'd in relevant part*, 558 F. App'x 998
    (Fed. Cir. 2014).............................................................................................................3

*NexStep Inc. v. Comcast Cable Commn's, LLC*,
    2021 WL 4077778 (D. Del. Aug. 20, 2021) .................................................................11

*Pasafeshare LLC v. Microsoft Corp.*,
    No. 6:20-cv-00397-ADA, D.I. 244 (W.D. Tex. Mar. 17, 2025)....................................13

*Slot Speaker Techs, Inc. v. Apple, Inc.*,
    2017 WL 4354999 (N.D. Cal. Sept. 29, 2017) .............................................................11

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    14 F.4th 1323 (Fed. Cir. 2021) ....................................................................................10

*Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*,
    15 F.4th 1121 (Fed. Cir. 2021) ..................................................................................8, 9

*Valdes v. GHP Asset Co. LLC*,
    2021 WL 274430 (E.D. Tex. Jan. 26, 2021) .................................................................15

*Vaporstream, Inc. v. Snap Inc.*,
    2020 WL 136591 (C.D. Cal. Jan. 13, 2020) .................................................................11

*Versa Corp. v. Ag-Bag Int'l Ltd.*,
    392 F.3d 1325 (Fed. Cir. 2004)......................................................................................6

**Statutes**

35 U.S.C. § 287(a)… ...........................................................................................................16

I.    <u>**MSJ ONE**</u>: **NON-INFRINGEMENT OF THE '337, '767, AND '830 PATENTS.**

In order to avoid Apple filing for summary judgment of non-infringement, all Resonant had to do was ask Dr. Goossen to compare the limitations of the claims it has asserted in this case to the accused functionalities in each of the accused products, and to do so in his report. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) ("[C]laims should be compared to the accused product to determine infringement."). That Resonant has chosen to accuse twenty-nine different versions of the iPhone of infringing its patents, making a proper analysis lengthy and time consuming, does not excuse its obligation to perform the proper analysis. Resonant chose to accuse dozens of different iPhones and is demanding almost a billion dollars in damages in this case. It should be required to do the work it needs to do to bring these claims to trial. *It hasn't*. Instead, Resonant failed to adduce any expert testimony regarding the '337 patent; and adduced only flawed testimony that ignores important differences between the accused products and the claim constructions adopted by the Court as to the other asserted patents. Because Resonant has not offered any competent expert testimony that appropriately addresses alleged infringement, Apple's motion should be granted.

### A.    Resonant Admits "There Is No Justiciable Issue Regarding the '337 Patent," So Summary Judgment Should Be Granted.

Resonant does not dispute that, to properly support its claims, expert testimony is required. (*See* Opp. at 1.) Resonant also readily admits (at 1) that it offered no expert opinion regarding infringement of the '337 patent and that there is "no justiciable issue" regarding any alleged infringement of that patent. As such, it can raise no genuine dispute of fact that Apple does not infringe the '337 patent, and Apple is entitled to summary judgment of no infringement.

Despite all of this, Resonant claims (at 1) that Apple's motion should be denied as moot because Resonant purportedly "narrowed the '337 patent out of if its case months ago." Not so.

1

Despite failing to offer any expert opinion regarding alleged infringement of the '337 patent, Resonant has insisted that Apple drop its IPR challenge to the '337 patent in exchange for dropping the '337 patent from this case. Apple is, of course, willing to engage in meaningful discussions as to how to narrow this case (as the parties have been doing for weeks). Why, though, Apple should be required to withdraw its validity challenge to the '337 patent in a separate proceeding before a different adjudicatory body simply because Resonant has failed to substantiate its claims in this case, Resonant does not say.[1] The Court should grant Apple's motion as to the '337 patent to finally resolve any dispute concerning the alleged infringement of it.

### B. Summary Judgment of Non-Infringement Should Be Granted As To All Products Dr. Goossen Did Not Analyze (All Asserted Patents).

Dr. Goossen did not analyze any product other than the iPhone 7, nor did he attempt to show that the iPhone 7 is representative of all twenty-nine accused products. This is a problem for Resonant because, as they concede (at 1), they need expert testimony to proceed with their infringement case. Resonant's only substantive response is to argue that Dr. Goossen does analyze "the relevant features of *all* Accused Products and conclude[s] that they *all* infringe." (Opp. at 2.) ***Not so***.

The absence of this analysis in Dr. Goossen's infringement opinions is glaring. As to the "housing" limitation, for example, Resonant does not dispute that the ***only*** product specifically analyzed by Dr. Goossen is the ███—i.e., the iPhone 7—where he points to three components of the Taptic Engine in the iPhone 7 as comprising the claimed "housing." *See* D.I. 140-2, ¶ 185-

---

[1] Although unrelated to its failure to prosecute its infringement case regarding the '337 patent, Apple has now agreed to dismiss certain affirmative defenses, mooting Resonant's motion for partial summary judgment on those affirmative defenses. *See* D.I. 151. Resonant agreed that this narrowing "resolves Resonant's motion" (D.I. 151), but Resonant has not yet notified the Court. *See* Ex. 23 (2025-05-30 Email Chain with Resonant).

186 (the entirety of Dr. Goossen's analysis concerning "housing").  Resonant argues, though, that

Dr. Goossen's analysis of the remaining accused products is contained in Appendix B to his report.

Notably, though, ***nowhere in his opinion*** concerning the "housing" does Dr. Goossen ever cite to

or even reference Appendix B—apparently, Apple was supposed to divine where this alleged other

analysis was on its own.  *See id.*  In any event, Appendix B consists only of Apple-produced images

of its Taptic Engines without any analysis or annotation provided.  Nothing in this Appendix

identifies what Dr. Goossen believes corresponds to the claimed "housing" for each of the accused

products, as is required to show infringement.

Any argument by Resonant that this missing analysis is simple or undisputed is immaterial.

*See, e.g.*, *Medtronic, Inc. v. Bos. Sci. Corp.*, 777 F. Supp. 2d 750, 769 (D. Del. 2011), *aff'd in*

*relevant part*, 558 F. App'x 998 (Fed. Cir. 2014).  The Federal Circuit has confirmed that, even

when noninfringement contentions do not challenge certain limitations, that "do[es] not relieve [an

expert] of the requirement to opine on the presence of structure meeting every claim limitation,

nor [is] it incumbent on the district court to scour the record for whatever other evidence may have

supported [a patentee's] infringement position."  *Medtronic Inc. v. Bos. Sci. Corp.*, 558 F. App'x

998, 1000 (Fed. Cir. 2014).

Dr. Goossen's treatment of the "housing" limitation is exemplary.  Dr. Goossen similarly

fails to address all of the accused products (other than the iPhone 7) in the remaining portions of

his infringement report.  For example, as discussed in Apple's opening brief (at 6-9), the only

specific analysis Dr. Goossen provides regarding several other elements of the asserted patents

also only touches on the iPhone 7.  *E.g.*, D.I. 140-2, ¶¶ 185-186 (Dr. Goossen's analysis concerning

element 1b, which only specifically analyzes only the iPhone 7 ███████████████; ¶ 187

(Dr. Goossen's analysis concerning element 1c, which (once all of the internal cross references are

followed) also only analyzes the iPhone 7 (¶¶ 273-274)); ¶ 195 (Dr. Goossen's analysis of element 1e, which elides any discussion of any specific accused products); ¶ 218 (Dr. Goossen's analysis of element 1a, which refers only to his analysis of the '767 patent); ¶ 220 (Dr. Goossen's analysis of element 1b); ¶ 225 (Dr. Goossen's analysis of element 1e); D.I. 140-2, ¶¶ 271-280 (Dr. Goossen's analysis of the "mass" limitation, which discusses only the iPhone 7). Apart from taking issue that this listing originally appeared in a footnote, Resonant does not substantively address, nor dispute, any of this.

Because Dr. Goossen's opinion that all of the accused products contain a housing lacks sufficient foundation, the only product for which Resonant has properly offered opinion testimony sufficient to create a fact dispute is the iPhone 7. *See id.* Apple's motion should therefore be granted. *Alloc, Inc. v. Pergo, LLC*, 751 F. Supp. 2d 1049, 1054–55 (E.D. Wis. Sept. 30, 2010) (granting summary judgment of noninfringement for 21 out of 24 total accused products where the plaintiff only presented evidence of infringement for 3 products and failed to explain how those products were representative of the 21 unanalyzed products).

C.    **Accused Products that** ███████████████████████████
███████████████████████████.

The asserted claims of the '767 patent require ██████████████████████
██████████████████████. Resonant does not raise any genuine disputes of fact as to the accused products. Instead, Resonant belatedly argues that ████████████
██████████████████ and urges that Dr. Goossen provided an adequate doctrine of equivalents argument. Neither assertion is correct.

As to claim construction, Resonant's arguments are directly contrary to what it previously told this Court. Specifically, at claim construction, Apple argued that claim 1 of the '767 patent

was indefinite because the claim didn't specify wh█████████████████████████████

██████████ recited later in the claim.  In response, Resonant asked this Court adopt the plain and

ordinary meaning because, according to Resonant, a person of ordinary skill in the art would

understand that "[a]s is commonly the case in ████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████."  (D.I. 79 at 28

(emphasis added).)  In making this argument, Resonant agreed that the claimed system necessarily

required ███████████████████████████.

     Now, when confronted with evidence that ████████████████████████████████

██████, Resonant urges this Court to ████████████████████████████████████

█████████████████████████.  Having successfully urged this Court to adopt a plain and ordinary

meaning that requires ███████████████ Resonant should not now be heard to argue something

to the contrary.  *See, e.g.*, *Key Pharms. v. Hercon Lab'ys Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998)

(judicial estoppel prevents a party from reversing course after successfully urging a district court

to adopt a claim construction); *see also, e.g.*, *Haemonetics Corp. v. Fenwal, Inc.*, 2010 WL

4027794, *3 (D. Mass. 2010) (applying judicial estoppel to prevent a party from making a contrary

claim construction argument, noting that "a party may not assert a claim in a legal proceeding that

is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier

phase of the same legal proceeding" (internal quotation marks and citations omitted)).

     In any event, Resonant had it right the first time: ██████████ should mean ████████████████

█████████████████.  As explained in a case cited by Resonant, "[i]n accordance with common

English usage, we presume a plural term refers to two or more items."  *Apple Inc. v. MPH Techs.*

*Oy*, 28 F.4th 254, 261 (Fed. Cir. 2022) (citing cases).  Resonant points to nothing that should lead

to a contrary result.  Resonant, for example, does not point to any "express language" from the

specification "indicating that the plural should include the singular or broadly describing the

invention as containing" ███████████████.  *See id.*  Nor does Resonant point to any other

claim which would be rendered superfluous by construing the term according to its plain and

ordinary meaning—i.e., the kind of "broader context" required to depart from plain meaning

referred to in the case cited by Resonant.  *See, e.g.*, *Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d

1325, 1330 (Fed. Cir. 2004) (cited by the *Apple v. MPH* court, finding that the doctrine of claim

differentiation outweighed the presumption of treating plural as plural).

To support its new interpretation of ███████ all Resonant points to is the preferred

embodiment disclosed in the specification, which (it claims) would be excluded by adopting the

plain and ordinary meaning of ███████  Not so.  The specification of the '767 patent repeatedly

describes the invention as containing ████████████████████████████████

████████████████████████████████████████████████████████████

██ ██ ██ ████████ ██████ ████ ████ ████ ██ ██ ██ ██ ██    ██

████████████████████████████████████████████████████████

███████████████████████████████████    That Resonant

drafted its claims more narrowly than the specification is the choice Resonant apparently made

when pursuing its patent.  It does not justify re-writing the claims now to avoid summary judgment.

As to Dr. Goossen's opinions, he never opined that ████████████████████████

██████.  When his infringement report discusses the '767 patent, Dr. Goossen never even

acknowledges that some of the accused products have █████████████, much less opine that ███

████████████████.  *See, e.g.*, D.I. 140-2, ¶¶ 211-212 (the entirety of Dr. Goossen's

analysis regarding this limitation).  The doctrine of equivalents argument Resonant points to (in ¶ 212) merely contains a rote recitation of the function-way-result test as to the operation of the control component, not ███████████████.  *See id.*, ¶ 212.  Accordingly, Apple's motion should be granted.

### D. Resonant Cannot Prove that the Accused Products Meet the "Control Component" Limitation ('830 Patent) Because Resonant Has Not Adduced Adequate Expert Testimony.

As explained in Apple's opening brief, Dr. Goossen's testimony, even if not excluded, is insufficient to create genuine disputes of fact as to whether the accused products meet the "control component…" limitation because Dr. Goossen fails to address almost all of the algorithm required by this Court's claim construction.  Indeed, as explained in Apple's opening brief, the ***only*** steps of the 21-step algorithm addressed by Dr. Goossen are steps 706 and 708 (as shown in Figure 7A).  *See* D.I. 140-2, ¶¶ 240–244 (discussing steps 706 and 708 only).  As to the other nineteen steps of the algorithm, Dr. Goossen either fails to address them altogether or reduces steps to broad concepts.

Resonant has not, and cannot, dispute what Dr. Goossen's report says.  The report does not contain any analysis identifying where each step of the algorithm is performed.  Indeed, Resonant's opposition does not address the steps of Figure 7A at all.  And as to the steps shown in the other figures, Resonant has not, and cannot, identify anywhere in his report where Dr. Goossen discusses any of the individual steps of the algorithm.  Instead, he reduces the steps to broad concepts—such as "handling sensor input" (*e.g.*, D.I. 140-2, ¶ 241[2]) or "output of the power supply" (*id.* at ¶ 243).

---

[2] Even ¶ 242, which Resonant points to in opposition (at 5-6) as supposedly disclosing additional analysis of Fig. 7B, does not include any analysis of at least steps 730-732.  Thus, what Resonant identifies for the Court only confirms that Dr. Goossen's analysis is deficient.

Resonant also does not address, much less distinguish, the Federal Circuit's decision in *Traxcell*—which (as Apple explained in its opening brief) is dispositive. Just as the Federal Circuit found in *Traxcell*, Dr. Goossen's analysis "neglected to address a significant fraction of that structure" and "instead discussed the accused technology at only a generalized level and didn't at all discuss [many steps] of the algorithm—focusing on function and results but eliding the way those results are achieved." *Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1128–29 (Fed. Cir. 2021) (affirming summary judgment where patentee's expert failed to discuss at least nine steps of an algorithm performed by the structure in a means-plus-function element). Thus, just as the Federal Circuit found in *Traxcell*, Resonant has failed to create genuine disputes of fact as to whether the accused products meet the "control component" limitation and summary judgment of no infringement is warranted.

**E.  Resonant Cannot Prove that the Accused Products Meet the "Driving Component" Limitation ('767 and '830 Patents) Because Resonant Has Not Adduced Adequate Expert Testimony.**

Contrary to Resonant's assertion, Apple's motion does not present a "battle of the experts." Apple's motion was based on Dr. Goossen's failure to opine—and Resonant's failure to adduce any evidence—that the accused products contain the structures required by the claim construction of "driving component…."

In response, Resonant points to two different portions of Dr. Goossen's report where, according to Resonant, Dr. Goossen "explained in detail how the coils in both the patents and the Accused Products work." (Opp. at 6.) Resonant's characterization of Dr. Goossen's report is not accurate. The first section cited by Resonant—where Dr. Goossen purportedly discusses the coils disclosed in the specification of the asserted patents—simply contains a "high level overview of electromechanical devices in general." *See* D.I. 140-2, ¶ 30; *see also id.* at ¶¶ 29-46. And the

latter section—where Dr. Goossen purportedly details how the coils in the accused products work—contains only a high-level description as to how Dr. Goossen believes ███████████ ████████. *See id.* at ¶¶ 55-79.  Nowhere in his report—either in the cited sections or otherwise—does Dr. Goossen ever address the specific coils required by the claim construction of "driving component…," much less compare those structures to structures allegedly contained in the accused products.

In any event, even if Resonant's characterization of these sections were correct (it isn't), simply discussing the background of the asserted patents and the purported operation of the accused products is insufficient.  Dr. Goossen was obligated to explain how the accused products "(1) perform the identical function recited in the means limitation and (2) ***perform that function using the structure disclosed in the specification or an equivalent structure***." *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1548 n.8 (Fed. Cir. 1994) (emphasis added); *see also Traxcell*, 15 F.4th at 1128 (explaining that "[l]iteral infringement of a means-plus-function claim limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification" (internal quotation marks omitted)).  Put simply, Resonant was required to adduce testimony comparing the limitations of the asserted claims to the accused products.  *See Fujitsu*, 620 F.3d at 1327 ("[C]laims should be compared to the accused product to determine infringement.").  Because it didn't, summary judgment should be granted.

## II.    <u>MSJ TWO</u>: NO WILLFUL INFRINGEMENT.

### A.    Resonant's Fabricated Post-Verdict, Post-Appeal Willfulness Case Is Beyond the Bounds of the Law, So Summary Judgment Should Be Granted.

Resonant's Opposition glosses over the fundamental legal requirement whose absence destroys its willful infringement claim—there is no evidence to show Apple intentionally or

deliberately infringed the asserted patents.  *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021) (*"SRI IV"*) ("Under *Halo*, the concept of 'willfulness' requires a jury to find . . . deliberate or intentional infringement.").  Without any evidence of intentional or deliberate infringement to present to the jury, Resonant pivots to a novel, wholly unsupported legal theory— that a jury could find that Apple's ***post-verdict, post-appeal*** conduct was willful.  Opp. at 7.  This theory lacks any basis in the law.  Resonant does not cite a single case to support the proposition that a defendant's post-verdict, post-appeal conduct can serve as a jury's basis for finding willful infringement.  In any event, Resonant's guess as to Apple's post-verdict, post-appeal conduct (which has not occurred and is not in the record) is insufficient to demonstrate willfulness as a matter of law.  The Court should reject Resonant's attempt to fabricate a new legal theory for willful infringement and should grant summary judgment of no willful infringement.

### 1.    Resonant Fails to Raise a Triable Issue for Willfulness.

Resonant's Opposition confirms that the Court should grant summary judgment of no post-suit willfulness.  First, Resonant does not dispute that Apple subjectively believes its accused products do not infringe and that the asserted patents are invalid.  *See* Opp. at 7–8 (not responding to Apple's arguments on subjective belief).  Second, Resonant ignores the standard for willful infringement set out in *Halo* and *SRI IV*.  *See SRI IV*, 14 F.4th at 1330.  To prove willful infringement, Resonant must show that—at the time of the challenged conduct (i.e., when Resonant filed its complaint)—Apple intentionally or deliberated infringed the asserted patents. *Id.*; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016) ("[C]ulpability is generally measured against the knowledge of the actor ***at the time of the challenged conduct***.").[3]  Resonant

---

[3] Unless otherwise stated, all emphasis added.

has failed to come forward with any evidence of Apple's intentional or deliberate conduct to sustain its burden on willfulness.

Resonant's willfulness case boils down to a single irrelevant assertion: that Resonant **believes** Apple will continue with "business as usual" **after** a verdict and/or the final resolution of the case. Opp. at 7. This is not evidence that can legally support a willfulness claim for several reasons. First, Resonant's belief about Apple's future conduct is not a fact for the jury—it is pure conjecture. Second, Apple's continued sale of products during the pendency of this litigation (including after a jury verdict and through any appeal) is not evidence of "intentional or deliberate" infringement. Instead, such conduct further supports a finding of no willful infringement, as it would be "consistent with a defendant who subjectively believes the plaintiff's patent infringement action has no merit." *Slot Speaker Techs, Inc. v. Apple, Inc.*, 2017 WL 4354999, at *2 (N.D. Cal. Sept. 29, 2017) (finding no willful infringement as a matter of law). In the same vein, courts routinely find that a defendant's decision to not design around a patent—even after a jury verdict— is insufficient as a matter of law to support a finding of willful infringement. *See Vaporstream, Inc. v. Snap Inc.*, 2020 WL 136591, at *21 (C.D. Cal. Jan. 13, 2020) ("Vaporstream has not identified any case holding that failure to adopt an available non-infringing alternative alone is sufficient to support a finding of willful infringement. Continued infringement of [a] patent is insufficient by itself to support a finding of willful infringement.") (citing, amongst others, *SRI Int'l, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019)); *see also NexStep Inc. v. Comcast Cable Commn's, LLC*, 2021 WL 4077778, at *14 (D. Del. Aug. 20, 2021) ("Defendant's failure to adopt a non-infringing alternative is also not sufficient to support a finding of willful infringement."). And third, Resonant cannot rely on the theoretical, future sale of an unannounced (and unaccused) product to support its willfulness claims. Resonant's novel theory should be

rejected.

### 2. Resonant's Claim That Apple Must "Promise to Stop Infringing" is Unfounded and Contrary to the Law.

Without a shred of legal support, Resonant's Opposition (at 7–8) baldly claims that Apple must "unambiguously promise to stop infringing if it loses at trial" for the Court to grant summary judgment of no willful infringement. There is absolutely no basis in the law to support such a statement and Resonant does not cite a single case that says otherwise.

That is because such a theory—that a defendant must cease infringing activity after a jury verdict to avoid a finding of willful infringement—is contrary to basic principles of patent law. To start, it ignores that Supreme Court and Federal Circuit case law requires evidence of intentional or deliberate infringement to find willful infringement. Resonant offers no explanation for how a defendant's conduct **after** a jury verdict could satisfy this evidentiary standard. Additionally, Resonant's theory—requiring a defendant to cease the sale of accused products—would effectively turn the doctrine of willfulness into an injunction, and do so without accounting for any of the *eBay* factors. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). That is improper, especially because Resonant does not (and cannot) seek injunctive relief here. Resonant should not be permitted to dodge the legal requirements for injunctive relief through a make-believe post-verdict, post-appeal willfulness claim.

### 3. Resonant Does Not Distinguish Any of Apple's Cases or Arguments.

Contrary to Resonant's assertion (at 8), Resonant has not rebutted any of Apple's willfulness arguments or cases. As discussed above, a "post-verdict and post-appeal" willfulness claim is not supported by the law. Resonant's attempt to side-step Apple's arguments and on-point cases through its unfounded theory fail. As each of Apple's cases shows, there are no facts in the record that support any post-suit willfulness claim in this case. Accordingly, Resonant's

willfulness case fails as a matter of law and the Court should grant summary judgment in Apple's favor.  *See, e.g.*, *Pasafeshare LLC v. Microsoft Corp.*, No. 6:20-cv-00397-ADA, D.I. 244 (W.D. Tex. Mar. 17, 2025) (granting summary judgment of no willful infringement); *AlmondNet, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-00898-ADA, D.I. 244 (W.D. Tex. Apr. 18, 2024) (same); D.I. 140-8 at 23:4–9 ("It's clear.  [Plaintiff is] alleging willfulness once [defendant] had notice of the suit.  Which in [this Court] is usually not much of a claim.").

## III.    **MSJ THREE**: NO ENTITLEMENT TO ASSERTED PRIORITY DATES.

### A.    **Resonant Admits It Will Not Rely on Its Provisional Application Priority Dates, So Summary Judgement Should Be Granted.**

Resonant makes three critical admissions regarding priority (at 8-9) in its opposition: (1) it admits that it will not rely on any provisional application to claim priority for the '767, '830, or '882 patents; (2) it admits that it has not met (or even attempted to meet) its burden to prove any claim of priority to any provisional applications; and (3) it admits Apple's Pakula prior art reference predates the priority date for the '767 and '830 patents, and Apple's Hajati '344 prior art reference predates the priority date for the '882 patent.[4]   D.I. 140   at 8–9.   Resonant's only substantive argument in response to Apple's motion is that Apple's Pakula and Hajati '344 references "do not anticipate, or otherwise render obvious, the asserted claims."  *Id*. at 10.   But Apple did not move for summary judgment of invalidity; rather, Apple's summary judgment is limited to the priority date dispute—which, in light of Resonant's admissions, Apple should clearly win.  The Court should grant summary judgment on this issue and find that the earliest priority dates for the asserted patents are May 18, 2010, for the '767 and '830 patents, and February 14, 2016, for the '882 patent.

---

[4] Resonant's opposition brief (at 9-10) erroneously refers to the Hajati *'344* reference (U.S. Patent No. 10,007,344) as "Hajati 334."

IV. <u>MSJ FOUR</u>: NO PRE-SUIT DAMAGES FOR THE '767 PATENT.

A. **Apple Is Entitled to Summary of No Pre-Suit Damages for the '767 Patent Because Resonant's Belated Attempts to Create Marking Evidence Are Insufficient and It Failed to Offer Evidence of Marking During Fact Discovery.**

Resonant bears the burden of proving compliance with §287(a). *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); *see also Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1367 (Fed. Cir. 2017). Resonant failed to meet its burden and the Court should find that Resonant is not entitled to pre-suit damages for the '767 patent.

1. **The Court Should Ignore Mr. Elenga's Untimely, Contradictory, and Self-Serving Declaration.**

In an attempt to rectify its failure to produce any evidence of compliance with § 287(a) during fact or expert discovery, Resonant's opposition relies on an untimely declaration from Robin Elenga. D.I. 165-6. But Mr. Elenga's declaration is contrary to his prior sworn testimony. "[A] party cannot create a genuine issue of fact…simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). Resonant has offered no explanation for Mr. Elenga's contradictory testimony (described below) or Resonant's failure to offer any evidence of marking during discovery. The Court should ignore Mr. Elenga's declaration because it is self-serving, contrary to his prior testimony, and untimely.

When Mr. Elenga was asked, point blank, "███████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████," Mr. Elenga answered that "██████

14

████████████████████████████████████████████.” D.I. 164-5 at 248:15-

23. Despite previously testifying that this was a "███████," Mr. Elenga's after-the-fact

declaration now states that the "industry norm in the sexual health products market…is to not have

patent or other legal markings on the product itself." D.I. 165-6, ¶ 7. Mr. Elenga's declaration is

directly contrary to his prior testimony and thus should be excluded. *Valdes v. GHP Asset Co.*

*LLC*, 2021 WL 274430, at *9, n.11 (E.D. Tex. Jan. 26, 2021) (declining to rely on a "self-serving"

affidavit "that impeaches, without explanation, [the declarant's] sworn testimony"); *Delgado v.*

*McHugh*, 2011 WL 11741023, at *1, n.2 (W.D. Tex. Nov. 21, 2011) (disregarding plaintiff's

declaration and granting summary judgment where the declaration "present[ed] many factual

assertions that contradict his prior sworn testimony offered at deposition").

 Moreover, the declaration includes statements that should have been disclosed during fact

discovery so that Apple had an opportunity to test them. The declaration states that "silicon inks

have health risks and are not biocompatible," "inks degrade or wear away on silicon, especially

when in contact with lubricants, which is a common use case with the Revel Body," and "[i]nward

etching and/or outward embossing can harbor bacteria contamination and other substances, and

affect cleanability." D.I. 165-6, ¶ 6. Mr. Elenga did not disclose this information when he was

asked directly about why marking the Revel Body packaging with the '767 patent was permissible.

D.I. 164-5 at 248:15-23. Had Mr. Elenga or Resonant offered this information at the time, Apple

could have further investigated and addressed the issue in its expert reports. That opportunity is

now lost, and Mr. Elenga's declaration should be stricken as untimely. *See BHI Energy I Power*

*Servs., LLC v. KVP Energy Servs., LLC*, 2023 WL 223179, at *3-4 (N.D. Tex. Jan. 17, 2023)

(declining to consider evidence presented for the first time during briefing as untimely).

 In short, Mr. Elenga's declaration should be given no weight.

### 2.    There Is No Record Evidence of Compliance with § 287(a).

The only "evidence" properly in the record relating to marking of the Revel Body with the '767 patent is was a single statement, offered in response to Apple's Interrogatory No. 10,[5] that "in circumstances such as here involving a personal health product composed of specialized materials designed to distinguish the product in the market, [marking the product packaging] was permissible and adequate under the law."  D.I. 141-5 at 22.  Resonant never offered evidence in support of this statement, nor did it expand upon this statement in its expert reports.  Resonant oversells this statement in its opposition, stating that it disclosed that "the Revel Body product is a personal sexual health product…with a focus on design and compatibility with human tissues." Opp. at 11.  Those statements appear nowhere in Resonant's discovery responses.  *See generally*, D.I. 141-5.  Resonant states it "also produced documents showing the product was made of specialized materials compatible with the human body," (Opp. 11-12), but the only statement in that document regarding the materials is that the product was made with silicon.  D.I. 165-5 at 1. Nothing about the fact that the product was made with silicon explains why it could not be marked with the patent.  On the contrary, that document shows there is already etching in multiple places on the product.  *Id*.  As Resonant's vague and conclusory statement was the only "evidence" properly in the record at the time of Apple's motion, case law supports granting Apple's motion. *See, e.g.*, *Contour IP Holding, LLC v. GoPro, Inc.*, 2020 WL 5106845, at *7 (N.D. Cal. Aug. 31, 2020) (granting summary judgment of failure to mark where plaintiff relied only on conclusory statements that "it would have been impossible or impractical to mark the camera itself in a meaningful and lasting way.").

---

[5] Interrogatory No. 10 sought "all actions and efforts you or your licensee(s) made to comply with 35 U.S.C. § 287(a)…."  D.I. 141-5 at 20.

### 3.    Mr. Elenga's Declaration Does Not Create a Fact Issue.

Even if the Court does consider Mr. Elenga's declaration—it should not—it should still grant Apple's motion.  Notably absent from Mr. Elenga's declaration and Resonant's response is any genuine response to Apple's argument that Resonant could have etched the patent number into the silicon in the same way it did with the vibration controls.  Apple is not arguing, as Resonant suggests, that because it was physically possible to mark the product, Resonant was required to do so as a matter of law.  Opp. at 13-14.  Rather, Apple disputes Resonant's argument that "etchings and markings would have serious detrimental effects and would not accord with the 'character' of the Revel Body." *Id*. at 14.  Indeed, Resonant's fabricated opposition argument is contradictory to the products own actual design.  As shown below, not only are the vibration controls etched in the silicon of the product, but there are multiple locations (identified below) that "could []harbor bacteria and make cleaning difficult."  *Id*. at 12.  There is a crevasse running across the middle of the product and there is an entire piece of the product that sits within the larger product, creating deep gaps in the silicon.  D.I. 140-21.  Indeed, the Revel Body even includes a removable center piece that is much more likely to harbor bacteria that is etching a patent number on the device.  Resonant offers no way to reconcile why it could etch the vibration controls into the product and why the design includes multiple, separable pieces that include multiple indentations and locations for bacteria to harbor but could not be further etched with the '767 patent number.  *See generally*, Opp. § V.  Resonant's arguments are simply incredible.



Additionally, neither Resonant nor Mr. Elenga address that Resonant could have marked the base of the product (which is used merely for charging and storage but does not contact the body in any way) with the patent number, either with etching or ink. *Id.* In fact, as shown below, the base includes the phrase "Patented and patents pending," but fails to identify the '767 patent.



In short, Mr. Elenga's declaration does not resolve the deficiencies with Resonant's marking evidence and argument.

18

The cases Resonant cites do not support denial of summary judgment.  In *EIS, Inc. v. IntiHealth Ger GmbH*, the defendant did not argue that marking the packaging was insufficient. 2023 WL 6799332, at *4 (D. Del. Aug. 23, 2023).  Rather, the parties agreed "marking packaging is the custom with sex toys."  *Id.*  Apple and Resonant have no such agreement and the only record evidence suggests marking the product was absolutely possible.  In *Denneroll Holdings Pty Ltd. v. Chirodesign Group, LLC*, the plaintiff offered evidence that because the product—a device placed behind a chiropractic patient's head during use—is out of the individual user's view when in use, it would not serve the purpose of § 287(a) to mark the physical product.  2016 WL 705207, at *9 (S.D. Tex. Feb. 23, 2016).  The plaintiff also offered significant evidence about how the product was typically displayed, marketed, and sold, giving the Court a reason to conclude that a reasonable jury may find its efforts were sufficient to comply with § 287(a).  Resonant has offered no such evidence here.  *See generally*, Opp. § V.

Apple's motion should be granted.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant Apple's summary judgment motions.


Date: June 9, 2025                          Respectfully submitted,

/s/ Michael A. Amon
Roger A. Denning (Cal. Bar No. 228998)
denning@fr.com
Michael A. Amon (Cal. Bar No. 226221)
amon@fr.com
John W. Thornburgh (Cal. Bar No. 154627)
thornburgh@fr.com
Ryan O'Connor (Cal. Bar No. 304815)
oconnor@fr.com
Oliver Richards (Cal. Bar No. 310972)
orichards@fr.com

19

Joy Backer Kete (Cal. Bar No. 355859)
kete@fr.com
James Yang (Cal. Bar No. 323287)
jyang@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Ruffin B. Cordell (Tex. Bar No. 04820550)
cordell@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW, Suite 1000
Washington, DC 20024
Tel: (202) 783-5070 / Fax: (202) 783-2331

Kathryn Quisenberry (Tex. Bar No. 24105639)
quisenberry@fr.com
Karrie Wheatley (Tex. Bar No. 24098605)
wheatley@fr.com
Joshua H. Park (Tex. Bar No. 24121766)
jpark@fr.com
FISH & RICHARDSON P.C.
909 Fannin Street, Suite 2100
Houston, TX 77010
Tel: (713) 654-5300 / Fax: (713) 652-0109

Alexander Pechette (Mass. Bar No. 698586)
pechette@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Tel: (617) 542 5070 / Fax: (617) 542 8906

Steven J. Wingard (Tex. Bar No. 00788694)
swingard@scottdoug.com
SCOTT, DOUGLAS & McCONNICO, L.L.P.
303 Colorado Street, Suite 2400
Austin, Texas 78701
Tel: (512) 495-6300 / Fax: (512) 495-6300

***Attorneys for Defendant Apple Inc.***

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on June 9, 2025, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system:

*/s/ Michael A. Amon*
Michael A. Amon